# Richmond

JETCO, INC. v. THE BANK OF VIRGINIA.

LOUIS J. POMPONIO, JR. v. THE BANK OF VIRGINIA, ET AL.

January 20, 1969.

Record Nos. 6798 and 6799.

Present, Eggleston, C.J., Snead, I'Anson, Carrico, Gordon and Harrison, JJ.

*Karl G. Sorg* for plaintiff in error in Record No. 6798.

*Joseph M. Spivey, III* (*John W. Riely; E. Milton Farley, III; Hunton, Williams, Gay, Powell & Gibson,* on brief), for defendant in error in Record No. 6798.

*Herbert C. Harper* for plaintiff in error in Record No. 6799.

*Joseph M. Spivey, III* (*John W. Riely; E. Milton Farley, III; Hunton, Williams, Gay, Powell & Gibson,* on brief), for defendants in error in Record No. 6799.

Eggleston, C.J., delivered the opinion of the court.

In February, 1966 The Bank of Virginia recovered a judgment of $20,837.08, with interest, and $2,000 attorney's fee and costs against William N. Barton. Pursuant to Code § 8-441 [Repl. Vol. 1957], the Bank filed in the clerk's office below a suggestion and request for a summons in garnishment to be issued against Jetco, Inc., and Louis J. Pomponio, Jr., for money believed to be due to Barton by virtue of a promissory note executed by Jetco, endorsed by Pomponio, and payable to Barton. In accord with this suggestion, process was issued out of the clerk's office directed to Jetco, Pomponio and Barton, and served on all three.

Jetco filed an answer alleging that it was not indebted to Barton on the note referred to in the Bank's suggestion, because, it said, the

note had been assigned by Barton to Rosalind C. Barton, notice of which assignment had been received by Jetco "some time during the year 1965." The answer further alleged that Jetco was not indebted under the note "due to the offset provisions contained" therein.

Pomponio filed an answer stating that he was not indebted to Barton and held "no property or effects" belonging to him "other than as a cotenant with others" under a certain lease on which there was presently no rent due.

The garnishment proceeding which had been made returnable on December 2, 1966 was continued until December 28, and by letter dated December 5 counsel for the Bank so notified counsel for Pomponio. When the matter came on for trial counsel for the Bank and counsel for Jetco were present, but neither Pomponio nor his counsel was present.

According to the "Incidents of Trial" copies of the note, the assignment and a related stock-purchase agreement were introduced into evidence by the Bank. The note, which is printed in the margin, provides that it is "subject to the terms of the Stock Purchase Agreement of even date herewith * * * and is subject to all set-offs, counter claims and recoupments set forth in said agreement." [1]

The stock-purchase agreement contains a warranty by Barton that he "will indemnify and save the corporation [Jetco] * * * harmless from any and all claims * * * against the corporation." He further agrees that in the event of a breach of this warranty Jetco may, "at its option, void the sale under paragraph 2 hereof and sue

---

[1]
  "$218,000.00                                    August, 1964
                                                  Arlington, Virginia
   "The undersigned corporation promises to pay to William N. Barton the sum of Two hundred eighteen thousand and no/100 Dollars ($218,000.00), with no interest except on past due installments, said principal payable in monthly installments of Two thousand and no/100 Dollars ($2,000.00) each, commencing on the 1st day of September, 1964, and a like installment on the 1st day of each and every month thereafter. This note is subject to the terms of the Stock Purchase Agreement of even date herewith of which the payee and maker hereof are parties, along with Margate Capital Corporation and Rex M. Phares and is subject to all set-offs, counter claims and recoupments set forth in said agreement.
                                                  "JETCO, INC.
                                                  "By Rex M. Phares
                                                          President

"Attest:
  "Curtis R. Taylor
[On the back of the note]
  "Endorser:
    "Louis J. Pomponio, Jr."

for restitution of all moneys paid thereunder, or it may offset against the promissory note * * * any damages suffered by reason of the breach of warranty."

The assignment is printed below.[2]

The "Incidents of Trial" show that only one witness, H. Burton Bates, Vice-President and Treasurer of Jetco, testified. He stated that a photostatic copy of the assignment had been received by him "some time during the year 1965." He further said that before a single payment had been made on the note claims were asserted against Jetco for debts incurred by it prior to the date of the stock-purchase agreement and note. Acting under the terms of this agreement, Jetco elected not to rescind the agreement but paid these claims, amounting to $84,167.55, and offset this amount against the first monthly installments of $2,000 due on the note. Since the amount of these offsets exceeded the total of the accrued installments due at the date of the trial, Bates said that there was nothing then due on the note. He further said that Barton was informed of the decision to make these offsets and "acquiesced" therein.

At the request of the lower court counsel for the Bank and counsel for Jetco filed written briefs on the questions involved. Counsel for Jetco took the position that since Rosalind C. Barton, the assignee of the note, was not a party to the proceeding the court had no right to adjudicate the validity of the assignment to her. Counsel for the Bank took the position that the assignment by Barton to his wife was "presumptively fraudulent" and void as to it, and that Mrs. Barton was not a necessary party to the litigation. In a letter opinion the lower court sustained the position of the Bank with respect to the

---

2

"August 15, 1964

"I hereby assign all my right, title and interest to a non-negotiable promissory note of approximately $212,000.00 (sic) given to me by Jetco on July 31, 1964 (sic), to my wife Rosalind C. Barton. This assignment is made in payment of monies loaned by my wife to Jetco in prior years.

"William N. Barton

"Witnessed
"Nicholas W. Reinhardt
"15 August 1964

"Accepted
"Rosalind C. Barton
"Sept. 30, 1964

"Witnessed
"S. H. Ranklin"

assignment and held that it "did not validly transfer to Barton's wife any interest which he had in the note."

The court further held that since Jetco had elected not to rescind the stock-purchase agreement and seek restitution, it was bound to pay Barton the installments on the note as they fell due and had no right to offset against the installments which first came due the claims which had accrued against it, Jetco. The result of this latter conclusion was that the amount of the accrued installments due on the note at the time of the trial was sufficient to satisfy the Bank's judgment against Barton. Accordingly, judgment was entered against Jetco the maker of the note and Pomponio the endorser thereon for the amount of the Bank's claim. To review this judgment separate writs of error were awarded Jetco and Pomponio.

In their respective petitions for writs of error Jetco and Pomponio make these same basic contentions: the lower court erred (1) in holding that the assignment from Barton to his wife of his interest in the note was fraudulent when she had not been made a party to the cause; and (2) in holding that Jetco had no right to offset the claims accrued against it against the first installments payable on the note.

Pomponio attacks the validity of the judgment against him on additional grounds which will be hereinafter noted.

■ We think the position of Jetco and Pomponio with respect to the validity of the assignment of Barton's interest in the note to his wife is well taken. While this assignment was presumptively fraudulent as to the creditor Bank (Code § 55-80; *Morrisette v. Cook & Bernheimer Co.*, 122 Va. 588, 592, 95 S. E. 449 (1918)), that presumption was subject to rebuttal by or on behalf of the assignee Mrs. Barton. Although she was not a party to the proceeding the lower court has adjudicated and held that the assignment to her was invalid.

■ It is well settled that a court may not adjudicate the rights of one who is not a party to the proceeding. 11 Mich. Jurisp., Judgments and Decrees § 19, p. 44. Consequently, in a garnishment proceeding it is generally held that the rights of a third party claimant to the fund sought to be garnisheed cannot be adjudicated unless he is a party to that proceeding. *Metz Mfg. Co. v. Holbeck*, 247 Mich. 241, 225 N. W. 536, 537, 538 (1929); *Foshee v. Board of Education*, 236 Ala. 457, 183 So. 441, 442 (1938); *Hanaford v. Hawkins*, 18 R. I. 432, 28 A. 605 (1893); *Airey & Stouse v. Hoke,* 164

La. 998, 115 So. 60, 62 (1927); 6 Am. Jur. 2d, Attachment and Garnishment, § 572, p. 966; 38 C. J. S., Garnishment § 276, pp. 550, 551.

In *Chesapeake & Ohio R. R. Co.* v. *Paine & Company*, 29 Gratt. (70 Va.) 502 (1877), we held that where the answer of a garnishee in an attachment proceeding disclosed that certain stock sought to be attached had been transferred to a third party, the trial court erred in not making an order requiring the claimant to appear and state the nature of his claim to the stock in controversy. 70 Va. at 509, 510.

■ In the present case Rosalind C. Barton, the assignee, could have been made a party to the proceeding under Code § 8-96, as amended. This section provides that whenever "nonjoinder shall be made to appear by affidavit or otherwise, new parties may be added * * * by order of the court at any stage of the cause as the ends of justice may require." See also, Burks Pleading and Practice, 4th Ed., § 72, pp. 140, 141. Had this course been followed the validity of the assignment could have been determined in the garnishment proceeding, for it has long been the rule in this jurisdiction that courts of law and courts of equity have concurrent jurisdiction over alienations made in fraud of creditors. *Garland* v. *Rives*, 4 Rand. (25 Va.) 282, 307, 15 Am. Dec. 756 (1826); Barton's Chancery Practice, 3d Ed., p. 587. This is in accord with the rule in other jurisdictions. 37 Am. Jur. 2d, Fraudulent Conveyances § 158, p. 828; 37 C. J. S., Fraudulent Conveyances §§ 304, 305, pp. 1136, 1137.

■ In the alternative, the lower court could have ordered the suspension of the garnishment proceeding until the plaintiff Bank had instituted a suit in equity against the necessary parties to determine the validity of the assignment. 9 Mich. Jurisp., Fraudulent and Voluntary Conveyances § 78, pp. 92, 93.

The determination of the validity of the assignment was of vital interest to Jetco the maker of the note and Pomponio the endorser in order that they might be protected against double liability thereon. It should have been settled before the court could properly determine what judgment should be entered in the garnishment proceeding. If the assignment be found to be valid then Barton, the payee in the note, has no interest therein which is subject to garnishment. If, on the other hand, the assignment be found to be invalid then Barton may have an interest in the note which may be subject to garnishment by the Bank.

■ We do not agree with the holding of the lower court that Jetco was bound to continue the payment of the installments due on the note despite the claims which were asserted against it for debts incurred by it prior to the date of the stock-purchase agreement and note. The note expressly stated that it was "subject to all set-offs, counter claims and recoupments set forth in" the stock-purchase agreement. In that agreement Barton warranted to indemnify Jetco from all claims "against the corporation [Jetco]." It was further specified that in the event of the breach of this warranty Jetco, at its option, might offset against the note "any damages suffered by reason of" such breach.

The Bank agrees that the accrual of claims against Jetco, amounting to $84,167.55, was a breach of Barton's warranty which Jetco had the right to offset against its liability on the note. It also agrees that there was no specification in the stock-purchase agreement or note as to how such offsets should be applied. And yet it says that the offsets should have been applied against the installments last accruing and not against those first accruing. In its letter opinion the lower court agreed with the Bank's contention and held that "the corporation [Jetco] having elected not to rescind and seek restitution was bound to pay the installments on the note as they accrued until it had set off by payments to corporate creditors an amount which equalled or exceeded its then balance due upon the note."

We find in neither the note nor the stock-purchase agreement any basis for such limitation on the right of offset. In the absence of such limitation, Jetco the payer in the note and Barton the payee had the right to apply the offsets as they saw fit. Jetco applied them against the installments first due on the note and Barton acquiesced therein. Having acquiesced in the manner in which the offsets were applied, Barton is in no position to complain of it. Similarly, the creditor Bank which stands upon no higher ground than the judgment debtor Barton (*Lynch* v. *Johnson*, 196 Va. 516, 521, 84 S. E. 2d 419, 422 (1954)), cannot complain of such application.

■ Pomponio attacks the judgment entered against him on several additional grounds. First, he says, since no "summons" was served on him notifying him of the hearing to be held on December 28, 1966, the judgment against him was void for lack of due process. We do not agree with this contention. Process requiring him to appear in the garnishment proceeding was duly served on this defendant and he was then properly before the court. We have been cited to no principle, nor are we aware of any, which requires the service

of an additional "summons" notifying a litigant who has been served with process that the cause has been set for hearing at a particular time. Since counsel for Pomponio was not present in court on December 2, 1966, at which time the case was scheduled for hearing on December 28, he was entitled to notice thereof. As has been said, counsel for the Bank so notified him by letter dated December 5. A copy of this letter was sent to the clerk of the lower court and filed with the papers in the cause. Since there is no contention that this letter was not received it is apparent that counsel for Pomponio was properly notified of the date of the hearing.

Pomponio next contends that there is no proof of his signature as endorser on the note. The ready answer to this contention is that the suggestion filed by the Bank in the clerk's office, as the basis for the request for a garnishment summons, alleged that the note had been endorsed by Pomponio, and since this allegation was not denied under oath, no proof of such signature was necessary. Code §§ 8-114, 8.3-307.

His final contention is that there was no proof of presentment, demand, and notice of dishonor which was necessary under the Uniform Negotiable Instruments Law. Code of 1950, §§ 6-423, 6-424, 6-442.[3] Since all parties agree that the note here involved was non-negotiable these sections have no application.

However, as indicated, Pomponio's other assignments of error and those of Jetco are well taken. Accordingly, the judgment appealed from is reversed and the case remanded for a new trial in accordance with the principles herein outlined.

If it be determined that the assignment of the note to Mrs. Barton was invalid, judgment should not be entered against Jetco or Pomponio for an amount in excess of the amount then owing by Jetco under the note, unless Jetco or Pomponio consents to a present judgment against it or him, with a suspension of execution until the debt becomes due. Burks Pleading and Practice, 4th Ed., Executions § 374, at 710; *Fentress* v. *Rutledge*, 140 Va. 685, 688, 125 S. E. 668, 669 (1924).

*Reversed and remanded.*

---

[3] These sections were repealed by Acts of Assembly 1964, ch. 219, p. 293. Corresponding provisions are found in the Uniform Commercial Code, § 8.3-501 ff.