ELMER STACY

V.

J. C. MONTGOMERY INSURANCE CORPORATION

Record No. 850480

April 22, 1988

Present: All the Justices

*Thomas P. Walk (Gillespie, Chambers, Altizer, Givens and Walk,* on brief), for appellant.

*Robert V. Ward (Woodward, Miles & Flannagan, P.C.,* on brief), for appellee.

RUSSELL, J., delivered the opinion of the Court.

The owner of property destroyed by fire brought this action against an independent insurance agent based on the agent's alleged failure to obtain and maintain insurance on the property. Having considered the pleadings and certain admissions, the trial court granted summary judgment in favor of the agent, and we awarded the owner an appeal. The sole question is whether the allegations of the motion for judgment, as supplemented by responses to requests for admissions, negate the agency relationship on which the owner relies.

The facts here stated are substantially as alleged in the motion for judgment. Elmer Stacy (owner) owned an unoccupied dwelling house in Tazewell County. He asked J.C. Montgomery Insurance Corporation (agent) to "procure and maintain" fire insurance coverage. The agent was an independent insurance agency which obtained coverage for its customers from various carriers. The agent made several efforts to obtain insurance for the owner during 1981 and 1982, but experienced difficulty because the property was unoccupied and "open to trespass."

On July 12, 1982, the agent submitted an application for coverage on the property to Virginia Property Insurance Association (VPIA), accompanied by payment of the estimated annual premium. VPIA issued temporary coverage in the form of a binder, but on September 1, 1982, sent the owner a notice of cancellation,

to take effect on September 13, because the property was found to be unoccupied.

On September 7, having received the notice of cancellation, the owner informed an employee of the agent that the property would be rented "within a few days." The employee stated that if the property were rented before the cancellation date, September 13, the agent would "see if the policy could be reinstated." On September 13, the owner informed an employee of the agent that the property had been rented. The employee so informed VPIA, which agreed to rescind the cancellation. VPIA kept the insurance in effect.

On October 4, VPIA inspected the property and found it still vacant. On November 4, VPIA issued a second notice of cancellation, to take effect November 16, giving again the reason that the property was vacant and open to trespass. The owner took no action in response to the November 4 notice, which he received on November 8, and the dwelling house on the property was destroyed by fire on November 24.

The owner's reason for ignoring the November 4 notice was that he had rented the property to tenants on October 22, and had informed an employee of the agent, on October 26, that the property was rented and occupied. The owner alleges that the employee responded by telling him that "as long as the property was occupied he would have the coverage requested." The owner asserts that the agent failed to notify VPIA that the property was occupied.

In response to a request for admissions propounded by the agent, the owner replied: "It is admitted that the plaintiff [owner] made no explicit requests for the defendant [agent] to perform any function other than to purchase insurance. It is denied that no other requests were implicit in the plaintiff's words and actions." On appeal, the owner argues that an agent is a fiduciary, bound to act in the best interests of his principal. Citing cases relating to fiduciary relationships, he argues that the agent was under a continuing duty to keep him informed, to advise him, to follow his instructions, and to take all steps necessary to protect his interests. *See, e.g., Musselman v. Willoughby Corp.*, 230 Va. 337, 337 S.E.2d 724 (1985); *Allen Realty Corp. v. Holbert*, 227 Va. 441, 318 S.E.2d 592 (1984); *Owen v. Shelton*, 221 Va. 1051, 1054, 277 S.E.2d 189, 191 (1981). He also argues that once an agency relationship is established, it will be presumed to continue, in the ab-

sence of evidence to the contrary. *See White* v. *Am. Nat. Life Ins. Co.*, 115 Va. 305, 309, 78 S.E. 582, 583 (1913). He contends that the agency relationship here began on July 12, 1982, and lasted until the property was destroyed by fire on November 24.

The agent responds that the owner's argument ignores the distinction between general and special agencies. It cites *Bowles* v. *Rice*, 107 Va. 51, 57 S.E. 575 (1907), where we defined a special agent as "one who is authorized to do one or more specific acts. . . ." 107 Va. at 52, 57 S.E. at 576. In discussing the authority of a special agent, we said that his powers are strictly construed; "he possesses no implied authority beyond what is indispensable to the exercise of the power expressly conferred, and must keep within the limits of his commission." *Id.* at 53, 57 S.E. at 576.

The agent contends that it was a special agent, employed by the owner for the sole purpose of purchasing insurance. It points out that it successfully performed that function, and that the property remained continuously insured until November 16, 1982.

Although *Bowles* dealt with a special agent's authority rather than his duties, both logic and fairness require that his duties be commensurate with his powers. A special agent cannot be charged with duties to his principal which cover subject matter outside the limited authority the principal has conferred upon him.

In the present case, the owner, in response to a request for admissions, admitted that he "made no explicit requests for the [agent] to perform any function other than to purchase insurance." That admission precludes the owner from reliance upon the broad allegation in his motion for judgment to the effect that he had employed the agent to "procure and maintain" fire insurance coverage. Such a narrow grant of authority as that admittedly made by the owner is the hallmark of a special agency. We conclude that the agent was merely entrusted with the authority to purchase insurance for the owner. We held in *Lacey* v. *Cardwell*, 216 Va. 212, 217, 217 S.E.2d 835, 839 (1975), that the authority of a special agent is to be determined from his contract with the principal. Here, the agent's duty was commensurate with that authority, and the agent fully performed its contractual duty.

The owner's admission makes it unnecessary to search further for duties arising from implied authority, custom, or extrinsic requirements imposed by law. It follows that the trial court cor-

rectly determined that no material facts were genuinely in dispute and entered summary judgment in the agent's favor.

The judgment will be

*Affirmed.*