Present:  All the Justices

HARTZELL FAN, INC.

v.  Record No. 971772   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                              September 18, 1998
WACO, INC.

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Melvin R. Hughes, Jr., Judge

In this appeal from a judgment entered in a garnishment proceeding, we determine whether a manufacturer's sales representative was the "agent" of the manufacturer within the meaning of Code § 8.3A-420 and was liable to the manufacturer for conversion of six checks.

Hartzell Fan, Inc. (Hartzell) is an Ohio corporation that manufactures ventilation equipment for industrial uses.  In April 1992, Hartzell executed a contract with Intermetrix, Ltd., t/a Metrix, Ltd. (Metrix), a Virginia corporation, in which Metrix agreed to act as a sales representative for Hartzell's products (Agreement).

In the Agreement, Hartzell contracted to pay Metrix a commission for all sales generated by Metrix.  The Agreement authorized Metrix to obtain purchase orders from customers and to submit the orders to Hartzell for approval.  After Hartzell approved an order and shipped the goods to the customer, Hartzell was required to bill the customer for the goods and, on receipt of the customer's payment, to pay Metrix a commission.

Although Hartzell requested its customers to pay Hartzell directly, occasionally a customer would deliver payment to Metrix. In such cases, the Agreement authorized Metrix to "forward immediately to [Hartzell] any and all moneys or remittance in any form which it may receive from, or on behalf of, the customers in connection with orders placed pursuant hereto." The Agreement also provided that Metrix had "no authority to receipt for moneys payable to [Hartzell]," and that "[i]t is understood and agreed that [Metrix] is in no way the legal representative or employee of [Hartzell] and that [Metrix] shall perform this agreement as an independent contractor and nothing herein contained shall be construed to be inconsistent with this relationship or status."[1]

In 1995, certain customers ordered Hartzell products from Metrix and sent Metrix a total of five checks in the aggregate amount of $34,387.93 (Hartzell checks) in payment for those products. Although each of the checks was made payable solely to Hartzell, Metrix improperly indorsed the checks and deposited them in Metrix's account without Hartzell's knowledge or consent.

---

[1]Although the Agreement states that it is governed by Ohio law, the parties have stipulated, for purposes of this appeal, that the laws of Virginia and Ohio are the same regarding the issues presented.

Another customer, American International, delivered to Metrix a check in the amount of $6,865.59 (American International check). This check was made payable solely to Metrix, which indorsed and negotiated the check.

In April 1995, Waco, Inc. (Waco) obtained a judgment against Metrix in the amount of $147,856.97, plus interest and attorney's fees. Waco initiated garnishment proceedings against Hartzell in the trial court based on commissions Hartzell allegedly owed Metrix. In its answer, Hartzell stated that it did not hold any monies due Metrix because Metrix had "improperly cashed" the Hartzell checks and the American International check.

Attached to Hartzell's answer was an affidavit of Edward A. Guillozet, Hartzell's Credit Manager. The affidavit stated that Hartzell owed Metrix commissions in the amount of $39,413.13, but that when Hartzell subtracted the amount of the checks Metrix "improperly cashed," Metrix actually owed Hartzell $723.48.[2]

The trial court stated that Waco's right to recover from Hartzell in the garnishment proceeding was the same as Metrix's right to recover from Hartzell. The court ruled that Hartzell "never acquired any interest" in either the Hartzell checks or

---

[2]This amount reflects other minor adjustments made by Hartzell that are not at issue on appeal.

the American International check and, therefore, did not have a conversion claim against Metrix. The court concluded that Hartzell could not offset the amount of the six checks against the monies it owed Metrix, and the court awarded Waco judgment in the amount of $33,183.04.

On appeal, Hartzell argues that it has a claim for conversion against Metrix based on Code § 8.3A-420(a), which provides:

> The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action for conversion of an instrument may not be brought by (i) the issuer or acceptor of the instrument or (ii) a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee.

Hartzell asserts that under the Agreement, Metrix was its "agent" for the limited purpose of receiving checks sent or presented to Metrix by purchasers of Hartzell products. Thus, Hartzell contends that the six checks at issue were delivered to Hartzell when Metrix received the purchasers' checks, and that Metrix converted the checks when it wrongfully indorsed and negotiated them. As a result, Hartzell asserts that it had the right to offset the amount converted by Metrix from the commissions owed Metrix.

4

In response, Waco contends that Hartzell does not have a right to offset the amount of the six checks because the checks were never delivered to Hartzell. Waco relies on the language in the Agreement denying Metrix the right to "receipt for" monies delivered by Hartzell customers. Waco asserts that since Metrix was not authorized to "receipt for" those monies, Metrix was not Hartzell's agent and Hartzell did not receive delivery of the checks within the meaning of Code § 8.3A-420. Waco also argues that Hartzell cannot claim Metrix was its agent because the Agreement clearly provided that Metrix was an independent contractor, and that "each party [was] an independent entity." Thus, Waco contends that Hartzell is liable to Waco on the garnishment summons because Hartzell did not have a conversion claim against Metrix and could not offset the amount of the checks from the monies Hartzell owed Metrix.

Initially, we observe that, under Code § 8.01-511, garnishment effectively is a proceeding by the judgment debtor in the name of the judgment creditor against the garnishee. Virginia Builders' Supply, Inc. v. Brooks & Co. Gen. Contractors, 250 Va. 209, 213, 462 S.E.2d 85, 88 (1995); Virginia Nat'l Bank v. Blofeld, 234 Va. 395, 399, 362 S.E.2d 692, 694 (1987); Lynch v. Johnson, 196 Va. 516, 521, 84 S.E.2d 419, 422 (1954); Ayres v. Harleysville Mut. Cas. Co., 172 Va. 383, 394, 2 S.E.2d 303, 307 (1939). The judgment creditor

5

stands on no higher ground than the judgment debtor and can have no right greater than the judgment debtor possesses. Lynch, 196 Va. at 521, 84 S.E.2d at 422; see International Fidelity Ins. Co. v. Ashland Lumber Co., 250 Va. 507, 511, 463 S.E.2d 664, 666-67 (1995); Jetco, Inc. v. Bank of Virginia, 209 Va. 482, 488, 165 S.E.2d 276, 280 (1969). Thus, the garnishee may offset against the lien of the judgment creditor any amount for which the judgment debtor is liable to the garnishee as of the return date of the garnishment summons. See id.; Blofeld, 234 Va. at 400, 362 S.E.2d at 695; see also Curl v. Sparkle Brite, Inc., 518 S.W.2d 775, 776 (Ky. 1975).

Under these principles, Waco can assert no greater rights in this garnishment proceeding against Hartzell than those possessed by Metrix. Therefore, we must consider what right Metrix had to recover monies against Hartzell as of the return date of the garnishment summons. The parties agree that the central issue in resolving this question is whether Metrix was acting as Hartzell's agent when it received the checks at issue. Under Code § 8.3A-420, Hartzell can maintain a claim for conversion of the checks in offset of the commissions due Metrix only if Hartzell received delivery of the checks through Metrix acting as its agent.

Agency is defined as a fiduciary relationship arising from "the manifestation of consent by one person to another that the

6

other shall act on his behalf and subject to his control, and the agreement by the other so to act."  Allen v. Lindstrom, 237 Va. 489, 496, 379 S.E.2d 450, 454 (1989) (quoting Raney v. Barnes Lumber Corp., 195 Va. 956, 966, 81 S.E.2d 578, 584 (1954)); accord State Farm Mut. Auto. Ins. Co. v. Weisman, 247 Va. 199, 203, 441 S.E.2d 16, 19 (1994); Reistroffer v. Person, 247 Va. 45, 48, 439 S.E.2d 376, 378 (1994).  The party who alleges an agency relationship has the burden of proving it. Weisman, 247 Va. at 203, 441 S.E.2d at 19; Allen, 237 Va. at 496, 379 S.E.2d at 454.

A special agent is one who is authorized to perform one or more specific acts in pursuance of particular instructions, or within restrictions necessarily implied from the stated acts to be performed.  Lacey v. Cardwell, 216 Va. 212, 220, 217 S.E.2d 835, 841 (1975); Bowles v. Rice, 107 Va. 51, 52, 57 S.E. 575, 576 (1907); see Stacy v. J.C. Montgomery Ins. Corp., 235 Va. 328, 331, 367 S.E.2d 499, 500-01 (1988).  The powers of a special agent must be strictly construed.  Id., 367 S.E.2d at 501; Lacey, 216 Va. at 221, 217 S.E.2d at 842; Bowles, 107 Va. at 53, 57 S.E. at 576.

When, as here, the question of special agency rests on a written document, the question presents an issue of law.  We are not bound by the trial court's ruling on this issue, and we are permitted the same opportunity as the trial court to consider

7

the contract language.  See C.F. Garcia Enterprises, Inc. v. Enterprise Ford Tractor, Inc., 253 Va. 104, 107, 480 S.E.2d 497, 498-99 (1997); Murphy v. Holiday Inns, Inc., 216 Va. 490, 492, 219 S.E.2d 874, 875 (1975).

The authority of a special agent must be ascertained from the terms of the instrument itself.  Lacey, 216 Va. at 217, 217 S.E.2d at 839.  No authority will be implied from the terms of the instrument, except that authority indispensable to the exercise of the powers expressly conferred.  See Stacy, 235 Va. at 331, 367 S.E.2d at 501; Lacey, 216 Va. at 221, 217 S.E.2d at 841-42; Bowles, 107 Va. at 53, 57 S.E. at 576.

Although the Agreement specifically stated that Metrix was an independent contractor, and not the "legal representative" of Hartzell, the use of these terms does not end our inquiry.  The relationship of parties to a contract does not depend on what the parties themselves call the relationship, but rather on what the relationship actually is in law.  Murphy, 216 Va. at 492, 219 S.E.2d at 876; Chandler v. Kelley, 149 Va. 221, 231, 141 S.E. 389, 391-92 (1928).

Here, the Agreement narrowly defined Metrix's authority with regard to payments made by the purchasers of Hartzell products.  The Agreement specifically stated that Metrix "has no authority to receipt for moneys payable to [Hartzell]."  However, Metrix was authorized by the Agreement to "forward

8

immediately to [Hartzell] any and all moneys or remittance in any form which it may receive from, or on behalf of, the [Hartzell] customers."

This authority to forward payments to Hartzell necessarily implied the authority of Metrix to receive payments for Hartzell, rather than to return the payments to the customers with instructions to pay Hartzell directly. Thus, the language of the Agreement, and the authority indispensable to the exercise of the power expressly conferred therein, made Metrix the special agent of Hartzell for the limited purpose of receiving payments from customers and forwarding those payments to Hartzell. See Stacy, 235 Va. at 331, 367 S.E.2d at 500-01; Lacey, 216 Va. at 220-21, 217 S.E.2d at 841-42.

Since Metrix was the special agent of Hartzell for this limited purpose, Metrix was acting as an "agent" of Hartzell within the meaning of Code § 8.3A-420 when Metrix received the checks. Therefore, under the terms of the statute, the five Hartzell checks were delivered to Hartzell when they were delivered to its special agent, Metrix. Because Hartzell received delivery of these checks, Hartzell could maintain an action against Metrix for their conversion. See Code § 8.3A-420.

The stipulated facts further state that the American International check was made payable to and was indorsed and

9

negotiated by Metrix.  Because of this factual difference, we will consider the sufficiency of the evidence of the conversion claim based on the Hartzell checks before considering the issue whether Hartzell could maintain a conversion claim based on the American International check.

The law governing the conversion of personal property is applicable to negotiable instruments.  Code § 8.3A-420(a). Conversion is a tort involving injury to property, in which one wrongfully exercises or assumes authority over another's goods, depriving him of their possession.  Hairston Motor Co. v. Newsome, 253 Va. 129, 135, 480 S.E.2d 741, 744 (1997); Bader v. Central Fidelity Bank, 245 Va. 286, 289, 427 S.E.2d 184, 186 (1993).  Conversion includes any distinct act of dominion wrongfully exerted over property that is in denial of, or inconsistent with, the owner's rights.  Hairston, 253 Va. at 135, 480 S.E.2d at 744; Universal C.I.T. Credit Corp. v. Kaplan, 198 Va. 67, 76, 92 S.E.2d 359, 365 (1956).  Generally, the measure of damages for the conversion of commercial paper is prima facie the face value of the converted instrument.  Code § 8.3A-420(b); see American Nat'l Bank of Portsmouth v. Ames, 169 Va. 711, 746, 194 S.E. 784, 796 (1938).

The Hartzell checks had a total face value of $34,387.93. The stipulated evidence showed that Metrix wrongfully indorsed and negotiated these checks, contrary to the express

10

instructions of the Agreement.  Metrix's indorsement and negotiation of the checks without permission constitutes a conversion because it was a wrongful exercise of authority depriving Hartzell of possession and an act of dominion wrongfully exerted over the checks inconsistent with Hartzell's ownership rights.  See Hairston, 253 Va. at 135, 480 S.E.2d at 744; Bader, 245 Va. at 289, 427 S.E.2d at 186; see also Code § 8.3A-420.  Since Metrix converted these checks in violation of Hartzell's rights, Hartzell was entitled to offset the total amount of those checks from the commissions owed Metrix in determining the amount Hartzell owed Waco.  See Lynch, 196 Va. at 521, 84 S.E.2d at 422; Trust Co. of Norfolk v. Snyder, 152 Va. 572, 585, 147 S.E. 234, 238 (1929).

The stipulated facts, however, state that the American International check was made payable solely to Metrix and do not indicate whether this payment was made for the purchase of Hartzell products.[3]  Based on this record, Hartzell failed to present sufficient evidence to support a conversion claim with regard to the American International check and, thus, cannot deduct the amount of that check from the commissions owed Metrix.  For the same reason, Waco has no claim against Hartzell for any commission allegedly due Metrix based on this check.

11

In conclusion, we hold that the trial court erred in failing to allow Hartzell to offset the amount of $34,387.93 against the commissions due Metrix, based on Metrix's conversion of the Hartzell checks. The trial court did not err, however, in failing to allow Hartzell to offset the amount of the American International check, because Hartzell failed to prove this part of its conversion claim. When, as here, the trial court has reached the correct result for the wrong reason in a portion of its judgment, we will assign the correct reason and affirm that portion of the judgment. Ridgwell v. Brasco Bay Corp., 254 Va. 458, 462, 493 S.E.2d 123, 125 (1997); Harrison & Bates, Inc. v. Featherstone Assoc. Ltd. Partnership, 253 Va. 364, 369, 484 S.E.2d 883, 886 (1997); Mathy v. Commonwealth, 253 Va. 356, 362, 483 S.E.2d 802, 805, cert. denied, ___ U.S. ___, 118 S.Ct. 414 (1997). On remand, the trial court is instructed to offset the amount of $34,387.93 from the total amount due Metrix from Hartzell, and to enter final judgment against Hartzell in favor of Waco for any sum remaining due to Metrix as of the return date of the garnishment summons. See Blofeld, 234 Va. at 400, 362 S.E.2d at 695.

For these reasons, we will affirm in part, and reverse in part, the trial court's judgment and remand the case for entry

---

[3]The affidavit of Edward Guillozet does not resolve this question because it refers only to checks made payable to

of a final judgment order in accordance with the principles and directives stated in this opinion.

Affirmed in part,
reversed in part,
and remanded.

---

Hartzell.