COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Coleman and Annunziata
Argued by teleconference


JOHN F. MARDULA, ESQUIRE,
 MARDULA & DAUGHTREY, PC, AND
 ROBERTS & ABOKHAIR, LLC (NOW
 ROBERTS, ABOKHAIR & MARDULA, LLC)
                                        OPINION BY
v.    Record No. 0170-00-4          JUDGE ROSEMARIE ANNUNZIATA
                                         DECEMBER 19, 2000
RICHARD S. MENDELSON, SPECIAL RECEIVER FOR
 INTERLASE LIMITED PARTNERSHIP


              FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                    Benjamin N. A. Kendrick, Judge

            William D. Dolan, III (Michael W. Robinson;
            Christine M. McAnney; Venable, Baetjer &
            Howard, L.L.P., on briefs), for appellants.

            John W. Toothman (David H. White; Toothman &
            White, P.C., on brief), for appellee.


     John F. Mardula, an attorney, appeals from the decision of

the Circuit Court of Arlington County, holding him in civil

contempt for violating that court's orders.  The civil contempt

charge was brought by Richard S. Mendelson, Special Receiver for

Interlase Limited Partnership.  The contempt citation against

Mardula was based upon his legal representation of White Star

Holdings, Ltd., an alleged transferee of assets from Interlase

Limited Partnership, which was the subject of the receivership.

On appeal, Mardula contends:  (1) the Arlington circuit court

lacked jurisdiction over White Star Holdings, Ltd., the company

which Mardula represented, and that neither White Star nor

Mardula was bound by orders issued by the Arlington circuit court; (2) the court did not identify the express terms of its orders which Mardula allegedly violated, nor did the court specify which actions of Mardula violated its orders; (3) the evidence was insufficient, as a matter of law, to support the contempt finding; and (4) the court erred in finding that certain communications were not protected by the attorney-client privilege. We find that neither Mardula nor White Star was bound by the orders of the Arlington circuit court and reverse the finding of contempt on that ground.

<u>FACTS</u>

In 1996, Dr. Kenneth R. Fox filed a divorce action against his wife, Wendy Fox, in the Circuit Court for the County of Arlington. The final decree, entered on April 9, 1997, granted a divorce to Mrs. Fox, awarded her a lump sum equitable distribution award of $1,450,000, and awarded child support in the amount of $7,000 per month. In the final divorce decree, the court found that various entities were "shams" created by Dr. Fox to conceal his assets. The Interlase Limited Partnership, a Georgia limited partnership, was among the entities specifically identified as a "sham" and declared to be the alter ego of Dr. Fox.

The events that caused the court to appoint a Special Receiver for Interlase arose from Interlase's ownership of certain patents developed by Dr. Fox and his former partner, Dr. Arthur Coster. Interlase was receiving royalties from the licensing of these patents to a company called Spectranetics Corporation. On September 8, 1998, Dr. Coster, acting as the

general partner of the Coster Family Limited Partnership, filed a petition to have a Special Receiver appointed to take control of the assets of Interlase. Coster alleged that Dr. Fox was diverting the assets of Interlase outside the United States and was applying them to his own personal use. On September 14, 1998, the court granted Coster's petition and entered an order appointing Richard Mendelson as Special Receiver for Interlase.

On October 15, 1998, White Star Holdings, Ltd., sued Spectranetics in federal court in Colorado for breach of a patent licensing agreement. In its complaint, White Star alleged that on September 11, 1998, before the appointment of the Special Receiver, Interlase assigned all of its patents and the rights to Interlase's patent licensing agreement with Spectranetics, to White Star. In its suit against Spectranetics, White Star sought to collect royalties due under the patent licensing agreement.

On December 18, 1998, the Arlington circuit court heard argument on a plea in bar contesting the jurisdiction of the court to appoint a special receiver for Interlase. The plea in bar had been filed by Daniel J. Glanz, an attorney for Lucre Investments, Ltd., which claimed to be the corporate general partner of Interlase. The court denied Glanz's plea in bar and issued a written order. In that order, the court declared "that any alleged transfer of assets of Interlase LP on or about September 11, 1998, is hereby declared void . . . ." White Star was not made a party to those proceedings, was not served with process, and did not appear at the December 18, 1998 hearing.

Mardula did not begin his representation of White Star in the Colorado federal proceedings until sometime in February 1999.

On July 2, 1999, at the request of the Special Receiver, the
Arlington circuit court entered an order declaring White Star to
be the alter ego of Dr. Fox and directing "White Star and its
agents, including John F. Mardula" to show cause why they should
not be held in contempt of court for violating the court's orders
stemming from the receivership proceedings.  The Special Receiver
alleged that the transfer of the patents from Interlase to White
Star was void and, therefore, White Star, through its agent,
Mardula, was wrongfully withholding Interlase's assets from the
Special Receiver.  Mardula moved for a bill of particulars, which
the Special Receiver filed.  On August 11, 1999, the court found
Mardula in contempt.  Mardula's motion for the court to
reconsider its finding was heard on October 1, 1999 and was
orally denied.  On December 22, 1999, the court entered a written
order denying Mardula's motion for reconsideration and finding
Mardula in contempt of the court's September 14 and December 18,
1998 orders.[1]  It is from this order that Mardula appeals.[2]

---

[1] In the December 22, 1999 order finding Mardula in
contempt, the court also ordered Mardula to pay over to the
Special Receiver any fees he had been paid by White Star,
Interlase, or Dr. Fox, and ordered Mardula to turn over to the
Special Receiver all of his records pertaining to Interlase and
White Star, an issue which is also before us on appeal.  Because
we reverse the contempt finding, we need not reach the propriety
of the remedy set forth by the court.

[2] The orders that comprise the basis for the court's finding
of contempt were entered on September 14, 1998 and December 18,
1998, respectively.  In the September 14, 1998 order, the court:
(1) appointed Mendelson as Special Receiver for Interlase; (2)
ordered the Special Receiver to:  (a) notify all interested
parties of his appointment; (b) identify and collect all assets
of Interlase; (c) determine claims to assets of Interlase; and
(d) file a report with the court; (3) ordered George Myers, an
attorney who had represented Interlase in certain patent matters,
to turn over to the Special Receiver all documents pertaining to
Interlase; and (4) "ordered that Kenneth R. Fox and the general

ANALYSIS

"Where the court's authority to punish for contempt is exercised by a judgment rendered, its finding is presumed correct and will not be reversed unless plainly wrong or without evidence to support it." Brown v. Commonwealth, 26 Va. App. 758, 762, 497 S.E.2d 147, 149 (1998). However, "[a] judgment, decree or order entered by a court which lacks jurisdiction of the parties or of the subject matter . . . is void." Robertson v. Commonwealth, 181 Va. 520, 536, 25 S.E.2d 352, 358 (1943). "[D]isobedience of, or resistance to a void order, judgment, or decree is not contempt. This is so because a void order, judgment, or decree is a nullity and may be attacked collaterally." Id. (citations omitted). "A court is without jurisdiction to order its receiver to seize property not included in the judgment, nor may it authorize the seizure of property which is claimed by one in possession who is not a party to the action." First Nat'l Housing Trust, Ltd. v. Superior Court of California, 263 P. 343, 344 (Cal. Ct. App. 1928) (citations omitted). See generally, 1 Ralph Ewing Clark, Law of Receivers § 78 (3d ed. 1959).[3]

_____

partner of Interlase Limited Partnership shall forthwith deliver to the Special Receiver all assets of Interlase Limited Partnership within their possession or control."
    The December 18, 1998 order: (1) denied the plea in bar filed by Glanz on behalf of Lucre and Interlase; (2) ordered that the appointment of the Special Receiver was still in effect; (3) denied the motion to vacate filed by Glanz; (4) ordered that the alleged transfer of assets from Interlase to White Star was void; (5) ordered Lucre to turn over to the Special Receiver any Interlase assets under Lucre's control; and (6) enjoined Lucre and its agents from claiming to be the corporate general partner of Interlase and from taking or purporting to take any actions on behalf of Interlase.
    [3]     [N]o order can be made directly binding on a person unless he is properly in court,

The court found Mardula guilty of contempt in his capacity as an agent of White Star and ostensibly on the ground that White Star possessed property which the court determined belonged to Interlase. However, White Star was not made a party to the September 14 and December 18, 1998 receivership proceedings. In the latter proceeding, an order was issued which purported to void the transfer of assets from Interlase to White Star. We hold the court's order voiding the transfer is void and, therefore, an improper basis for contempt. In short, in the absence of <u>in personam</u> jurisdiction over White Star, the court lacked jurisdiction to determine the validity of White Star's right to the assets. <u>See</u> <u>Zenith Corp. v. Hazeltine</u>, 395 U.S. 100, 110 (1969)[4]; <u>see also</u> <u>Jetco, Inc. v. Bank of Virginia</u>, 209 Va. 482, 486, 165 S.E.2d 276, 279 (1969) ("It is well settled that a court may not adjudicate the rights of one who is not a party to the proceeding."); <u>Finkel Outdoor Products, Inc. v. Bell</u>, 205 Va. 927, 931, 140 S.E.2d 695, 698 (1965) (holding that where judgment lien creditors were not served or made parties to

---

<blockquote>
neither can his rights or interests in the property, if any, be foreclosed . . . .

* * * * * * *

[S]uch person having possession, custody or control of the property should be made a party to the suit and be given an opportunity to resist the application for a receivership and to otherwise protect his rights.
</blockquote>

[4] In <u>Zenith Corp.</u>, Zenith had sued a subsidiary company, alleging that the parent and the subsidiary had committed certain Sherman Act violations. The parent company was not made a party to the suit. The trial court entered judgment against both the subsidiary and the parent company, and the parent appealed. The Supreme Court held that the judgment against the parent was

suit, court did not have jurisdiction over them and did not have power to extinguish their rights to property).  The trial court also erred in finding that it did "not need jurisdiction over the transferee to void a [fraudulent] transaction."  See Iron City Sav. Bank v. Isaacsen, 158 Va. 609, 627, 164 S.E. 520, 526 (1932) (holding that trial court had no power to enter an in personam decree as to the ownership of stock where the court had not acquired jurisdiction over the transferee in an alleged fraudulent conveyance).  It follows that White Star and, by extension, its agent, Mardula, were not bound by the court's finding that the property in White Star's possession belonged to Interlase and cannot be held in contempt for failing to abide by any dictate that the property in question be relinquished to the Special Receiver.  See Robertson, 181 Va. at 536, 25 S.E.2d at 358.

For the same reason, we hold that the court's finding in the show cause order of July 2, 1999 that White Star was the "alter ego" of Fox is also void and, therefore, insufficient as a basis for holding Mardula in contempt for failing to transfer Interlase assets to the Special Receiver.  See Zenith, 395 U.S. at 111 ("Perhaps Zenith could have proved and the trial court might have found that [the subsidiary and the parent] were alter egos; but absent jurisdiction over [the parent], that determination would bind only [the subsidiary].").  The court did not find White Star to be the alter ego of Fox until July 2, 1999, when it issued an order granting the Special Receiver's motion to show cause

---

improper because the parent had not been made a party to the suit.

against White Star.  The July 2, 1999 order was issued after the alleged contemptuous conduct by Mardula and

clearly cannot be deemed a proper predicate for finding him in contempt of the September 14 and December 18, 1998 orders.

Finally, even were we to find that Mardula was within the jurisdiction of the court and was bound by the orders which he is alleged to have disobeyed, the fact that Mardula had notice of their issuance is insufficient, as a matter of law, to sustain the court's finding of contempt. The September 14 and December 18, 1998 orders failed to describe any specific conduct that White Star or Mardula was required to perform or prohibited from doing. Although a party with notice of a court's order may be held in contempt where a violation of the order is proved, Calamos v. Commonwealth, 184 Va. 397, 403, 35 S.E.2d 397, 399 (1945), in instances where the order does not explicitly direct, mandate or prohibit specific conduct, it is insufficient to sustain a finding of contempt. French v. Probst, 203 Va. 704, 710, 127 S.E.2d 137, 141 (1962) ("order which merely declares the rights of parties without an express command or prohibition may [not] be the basis of a contempt proceeding"); see Winn v. Winn, 218 Va. 8, 10, 235 S.E.2d 307, 309 (1977) ("As a general rule, 'before a person may be held in contempt for violating a court order, the order must be in definite terms as to the duties thereby imposed upon him and the command must be expressed rather than implied.'" (citation omitted)); Wilson v. Collins, 27 Va. App. 411, 424, 499 S.E.2d 560, 566 (1998) ("If the actions of the alleged contemnor do not violate a clearly defined duty imposed upon him or her by a court's decree, the alleged contemnor's actions do not constitute contempt.").

Therefore, for the reasons stated in this opinion, the

finding of contempt is reversed.[5]

Reversed.

---

[5] Because we reverse the finding of contempt, we need not address the claim that the court erred in finding certain communications were beyond the scope of the attorney-client privilege.