IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 26, 2008

Charles R. Fulbruge III
Clerk

No. 08-50240
Summary Calendar

JOHN M VUKSICH

Plaintiff-Appellant

V.

UNITED STATES OF AMERICA

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:07-CV-233

Before HIGGINBOTHAM, BARKSDALE, and ELROD, Circuit Judges.

PER CURIAM:[*]

This appeal brings to us a retired military man's Federal Tort Claims Act suit against the Government. The inexplicable failings of both parties to use reasonable care led to Plaintiff's personal belongings being auctioned by a private storage company to satisfy outstanding storage fees. After a bench trial, the district court entered a take nothing judgment. We affirm.

I

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

John Vuksich (Plaintiff) retired from the Army in June 1993. He was entitled to have the Army pay for one year of storage for his belongings, and he was also entitled to have the Army pay to ship his belongings within a year. The authorized period expired on June 3, 1994. Although the storage entitlement could not be extended, Plaintiff could request up to five one-year extensions of the shipping benefit. Plaintiff testified that he "knew that the first one year was paid for by the government. And [he] knew that after that one year, storage could continue on [his] nickel." Plaintiff's belongings were moved and stored by a private company.

Plaintiff duly requested the extension of the shipping entitlement during the following years. In several of the letters advising Plaintiff that his shipping entitlement had been extended, the Government reminded Plaintiff that the storage entitlement was not subject to extension, that it expired a year after his retirement, and that Plaintiff "must contact the Transportation Office(s) which is storing your property to arrange payment of storage costs." Plaintiff, however, neither contacted the Transportation Office nor paid the storage fees. In April 1999, the Government sent Plaintiff a letter reminding him that his "FINAL request" for extension of the shipping entitlement had been granted, and that the extension ran until 30 June 1999. The letter contained the same advisements regarding the storage entitlement. Plaintiff, however, made no effort to arrange for shipment of his goods or to pay the storage fees.

As the district court explained in its findings of fact and conclusions of law, "the Plaintiff had been aware since June 14, 1997, at the latest, of the possibility that a failure to follow the conditions of his storage entitlement and agreement could 'result in the commercial company holding a public auction of [his] goods.'" Plaintiff was also warned in March 1998 that failure to take delivery of his goods before the expiration of the shipping entitlement would lead to his shipment being converted to a commercial account.

In 2000, 2001, and 2002, the Government sent Plaintiff letters concerning the storage of his goods; however, the letters were sent to an old address. Plaintiff had notified the Government of a change of address and provided the correct address, but for some reason the computer system was never updated. The Government also provided the private storage company with an incorrect address for Plaintiff, the effect of which was that Plaintiff never received the correspondence from the storage company informing him that it was going to auction off his belongings to pay for outstanding storage fees. Plaintiff's belongings were auctioned in November 2004. A person who had bought some of Plaintiff's belongings at the auction contacted him because he wanted to return some of Plaintiff's personal effects.

Plaintiff unsuccessfully sought compensation from the Army through administrative channels. He then sued the Government under the Federal Tort Claims Act, alleging negligence and conversation under Virginia law. The district court held a bench trial. The court concluded that the Government was negligent, but that Plaintiff was also at fault. Because Virginia maintained the affirmative defense of contributory negligence, the court held that Plaintiff's negligence barred recovery. As to conversion, the court concluded that Plaintiff failed to carry his burden of proof as he "presented no evidence the [Government] took any action that was in denial of, or inconsistent with, the Plaintiff's rights as owner." Finally, even assuming that he had proved liability, the court concluded that Plaintiff "failed to prove by a preponderance of the evidence what, if any, amount of damages he should receive." Plaintiff appeals.

II

"'The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed de novo.'"[1] "'A

---

[1] Water Craft Mgmt. LLC v. Mercury Marine, 457 F.3d 484, 488 (5th Cir. 2006) (quoting In re Mid-South Towing Co., 418 F.3d 526, 531 (5th Cir. 2005)).

factual finding is not clearly erroneous as long as it is plausible in the light of the record read as a whole.'"[2]

## III

## A

Plaintiff's first assignment of error is unclear. The argument revolves around notice and due process. While Plaintiff tells us that he is not pursuing a constitutional claim under the guise of the FTCA, we cannot understand the argument as anything but an assertion that the district court erred because the "notice" provided by the Government to Plaintiff fell short of what the Due Process Clause requires. This may be so, but "[t]he FTCA does not in terms create liability for conduct in violation of the Constitution; such conduct may be the basis for an FTCA claim only if the conduct violates applicable state tort law and if the suit is not barred by some federal limitation upon FTCA liability."[3] The cases upon which Plaintiff relies all involve constitutional due process challenges to the adequacy of notice given by the government.[4] Plaintiff complains that the district court analyzed the Government's actions like a mine-

---

[2] Walker v. City of Mesquite, 402 F.3d 532, 535 (5th Cir. 2005) (quoting United States v. Cluck, 143 F.3d 174, 180 (5th Cir. 1998)).

[3] R. Fallon, et al., Hart & Wechsler's The Federal Courts and the Federal System 968 (5th ed. 2003); see Federal Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 478 (1994) ("Indeed, we have consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State—the source of substantive liability under the FTCA."); Sanchez v. Rowe, 870 F.2d 291 (5th Cir.1989) ("We agree . . . that suits for violations of federal constitutional rights, even though tortious in nature, are not within the scope of the FTCA. Because '[b]y definition constitutional torts are not based on state law,' the FTCA does not provide a cause of action for constitutional torts." (quoting McCollum v. Bolger, 794 F.2d 602, 608 (11th Cir. 1986))).

[4] See Jones v. Flowers, 547 U.S. 220 (2006) (due process challenge to the steps taken by the state to provide delinquent tax payer notice of tax sale); Dusenbery v. United States, 534 U.S. 161 (2002) (due process challenge to the sufficiency of notice given to a prisoner of the Government's intent to forfeit his property); Mennonite Bd. of Missions v. Adams, 462 U.S. 791 (1983) (due process challenge to the sufficiency of notice provided to a delinquent tax payer prior to tax sale of property); Robinson v. Hanrahan, 409 U.S. 38 (1972) (per curiam) (due process challenge to the sufficiency of notice provided to a prisoner of state forfeiture proceedings).

run tort, but that, of course, is what the FTCA contemplates. As the Supreme Court has explained, under the FTCA, "the United States waives sovereign immunity 'under circumstances' where local law would make a 'private person' liable in tort."[5]

B

Plaintiff next attacks the district court's contributory negligence finding. Plaintiff does not argue that contributory negligence is not the law of Virginia or that it is not a complete bar to recovery. Instead, he contests the district court's application of the doctrine. Plaintiff has shown no reversible error.

As the Virginia Supreme Court has explained, "Contributory negligence is an affirmative defense that must be proved according to an objective standard whether the plaintiff failed to act as a reasonable person would have acted for his own safety under the circumstances. The essential concept of contributory negligence is carelessness."[6] "Contributory negligence consists of the independent elements of negligence and proximate causation."[7] "Negligence of the parties may not be compared, and any negligence of a plaintiff which is a proximate cause of the accident will bar a recovery."[8] Proving contributory negligence is the defendant's burden, and it is generally a question of fact.[9]

The district court found that "[a]s a result of the Plaintiff's complete inaction and failure to take reasonable steps to pay for the storage and recover his property, the Court finds by a preponderance of the evidence the Plaintiff was negligent and his negligence was a proximate cause of his damages." The

---

[5] United States v. Olson, 546 U.S. 43, 44 (2005).

[6] Jenkins v. Pyles, 611 S.E.2d 404, 407 (Va. 2005) (citations omitted).

[7] Estate of Moses v. Sw. Va. Transit Mgmt. Co. Inc., 643 S.E.2d 156, 160 (Va. 2007).

[8] Litchford v. Hancock, 352 S.E.2d 335, 337 (Va. 1987).

[9] Sawyer v. Comerci, 563 S.E.2d 748, 752 (Va. 2002).

record adequately supports this finding. Plaintiff admitted in his testimony that he knew he was responsible for paying storage costs after the first year, and the Government reminded him of this several times between 1994 and 1999 and told him to contact the transportation office to arrange for payment. Plaintiff was unambiguously told that his shipping entitlement expired on June 30, 1999, and could not again be extended. As Plaintiff testified, "I knew that the shipping was over. I knew that the storage funded by the government had been over for years. The situation in my life said I don't need the property now. . . . The property's in D.C. Leave it all alone and live your life that you need over here. So I had no requirement for the property."

And as the district court noted, "the Plaintiff had been aware since June 14, 1997, at the latest, of the possibility that a failure to follow the conditions of his storage entitlement and agreement could 'result in the commercial company holding a public auction of [his] goods.'" Despite Plaintiff's admitted knowledge that he was responsible for the storage costs after the first year, and the Government's repeated advisements, Plaintiff took no step to pay for the storage, to contact the Government about the storage, to arrange for the shipment of his goods, to contact the storage company after his shipping entitlement ended, to pay the storage company after the shipping entitlement ended, or anything else for that matter. In short, the record amply supports the district court's conclusion that Plaintiff failed to act as a reasonable person would to safeguard his property, and that those failings were a proximate cause of his injury.

C

Plaintiff next contends that the district court erred in finding that he failed to prove that the Government converted his property. The Virginia Supreme Court has explained that "[c]onversion is a tort involving injury to property, in which one wrongfully exercises or assumes authority over another's goods, depriving him of their possession. Conversion includes any distinct act

of dominion wrongfully exerted over property that is in denial of, or inconsistent with, the owner's rights."[10]

The district court concluded that evidence at trial demonstrated that the private storage company was the entity responsible for auctioning Plaintiff's property, and that "Plaintiff presented no evidence the Defendant took any action that was in denial of, or inconsistent with, the Plaintiff's rights as owner." The record amply supports these conclusions. We see no evidence that the Government was aware of or in involved with, let alone authorized, the auctioning of Plaintiff's goods. When the Government extricated itself from the storage and shipping of Plaintiff's belongings, it did not interfere with Plaintiff's rights or wrongfully exercise authority or control over Plaintiff's property. The property remained Plaintiff's at that time, and Plaintiff knew where his property was and that he was responsible for paying the costs of storage. To the extent Plaintiff intends to challenge this finding, he has shown no error.

Plaintiff tries to sidestep this conclusion by arguing that the district court erred by not treating the Government as a warehouseman under Virginia law, which matters, Plaintiff says, because of some of the statutory provisions applicable to warehouseman.[11] "The [FTCA] makes the United States liable 'in the same manner and to the same extent as a private individual under like circumstances.' As th[e] Court said in Indian Towing, the words 'like circumstances' do not restrict a court's inquiry to the same circumstances, but

---

[10] Hartzell Fan, Inc. v. Waco, Inc., 505 S.E.2d 196, 201 (Va. 1998).

[11] See Va. Code Ann. §§ 8.7-204, 8.7-210.

require it to look further afield."[12]  Under Virginia law, a "[w]arehouseman' is a person engaged in the business of storing goods for hire."[13]

Plaintiff has not persuaded us that a warehouseman is the appropriate "private individual" analogy here.  The Government never itself stored Plaintiff's belongings.  Rather, the Government arranged and paid for a private company to move and store Plaintiff's property as a benefit after his retirement.  Plaintiff knew that a private company was providing these services.  As the Government explains, it was acting akin to an employer providing a relocation benefit to an employee.  On the record we find before us, we agree with the Government. Plaintiff has shown no reversible error.

### III

Because Plaintiff has shown no reversible error in the district court's contributory negligence or conversion determinations, we have no occasion to consider the parties' damages arguments.

The judgment of the district court is AFFIRMED.

---

[12] Olson, 546 U.S. at 46 (citing 28 U.S.C. § 2674; Indian Towing Co. v. United States, 350 U.S. 61 (1955)) (citations omitted).

[13] Va. Code Ann. § 8.7-102(m).