OPINION
{¶ 1} Plaintiffs-appellants, Title First Agency, Inc. ("Title First") and Park Place Title Agency, Ltd. ("Park Place"), appeal from a judgment of the Franklin County Court of Common Pleas granting a directed verdict in favor of defendants-appellees, Bank One, N.A., Fifth Third Bank, First Merit Corporation, and Lima Superior Community Federal Credit Union ("Lima Superior"), on appellants' conversion claims. Because reasonable minds could differ regarding whether the person to whom the converted instruments were delivered was appellants' agent, we reverse the judgment of the common pleas court and remand this matter for further proceedings.
 {¶ 2} By complaint filed December 18, 2001, appellants initiated this lawsuit against appellees and Xpress Closing Service, Inc. ("Xpress"), Scott Rotkowski, an officer or shareholder of Xpress, North Shore Enterprises, Inc., dba Lorain County Currency Exchange ("North Shore"), Emmett Ross, individually and dba A-1 Bail Bonding and First Bank of Ohio. Appellants averred that they hired Xpress/Rotkowski to conduct real estate closings. Appellants authorized Rotkowski to execute documents during the closings and to receive and immediately forward any checks he received at those closings to appellants. During the subject closings, Rotkowski received four checks made payable to appellants. However, rather than forwarding the checks to appellants, Rotkowski endorsed the checks" Xpress closing service Rotkowski" and cashed them.[1] The checks were all cashed at either North Shore or A-1 Bail Bonding. Appellees are all banks who further negotiated the checks. Appellants eventually dismissed First Bank of Ohio with prejudice and obtained a default judgment against Xpress, Rotkowski, North Shore and Mr. Ross, individually and dba A-1 Bail Bonding.
 {¶ 3} This appeal involves appellants' claims against appellees for conversion pursuant to R.C. 1303.60. Appellants first sought summary judgment on their conversion claims. Appellees, Bank One N.A. and Fifth Third Bank, also filed cross motions for summary judgment. These motions were denied by the trial court and the case proceeded to a jury trial. After appellants presented their case-in-chief, the trial court granted appellees' motion for a directed verdict. The trial court ruled that reasonable minds could only conclude that appellants did not receive delivery of the checks, either directly or through an agent.[2] Accordingly, the trial court granted judgment in favor of appellees.
 {¶ 4} Appellants appeal, assigning the following assignments of error:
1. The trial court erred in granting defendants' motion for a directed verdict.
2. The trial court erred in denying plaintiffs['] motion for summary judgment.
 {¶ 5} Appellants contend in their first assignment of error that the trial court erred in granting a directed verdict on their conversion claims because Rotkowski was appellants' agent for purposes of accepting delivery of the instruments; therefore, appellants could bring conversion claims against appellees pursuant to R.C. 1303.60.
 {¶ 6} A motion for a directed verdict may be granted when the trial court, construing the evidence most strongly in favor of the non-moving party, finds that, upon any determinative issue, reasonable minds can come to but one conclusion upon the evidence submitted and that conclusion is adverse to the non-moving party. Civ.R. 50(A)(4); Malone v. Courtyard by Marriott L.P. (1996),74 Ohio St.3d 440, 445. The trial court must give the non-moving party the benefit of all reasonable inferences from the evidence.Cummings v. B.F. Goodrich Co. (1993), 86 Ohio App.3d 176,186-187. In determining whether to direct a verdict, the trial court does not engage in a weighing of the evidence nor does it evaluate the credibility of witnesses. Malone, at 445. Rather, the trial court is confronted solely with a question of law: was there sufficient material evidence at trial so as to create a factual question for the jury. Id.; McConnell v. Hunt SportsEnt. (1999), 132 Ohio App.3d 657, 686-687. Our review of the trial court's ruling on a motion for a directed verdict is de novo. Titanium Industries v. S.E.A., Inc. (1997),118 Ohio App.3d 39, 47-48.
 {¶ 7} R.C. 1303.60, which governs conversion of instruments provides, in pertinent part:
The law applicable to conversion of personal property applies to instruments. An instrument also is converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or if a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action for conversion of an instrument may not be brought by the issuer or acceptor of the instrument or a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee.
 {¶ 8} Because appellants are payees, appellants can bring claims for conversion of the instruments under R.C. 1303.60 only if appellants received delivery of the instruments either directly or indirectly through delivery to appellants' agent. SeeOlympic Title Ins. Co. v. Fifth Third Bank, Montgomery App. No. 19324, 2002-Ohio-5826, at ¶ 28. Appellants do not contend they directly received the checks; rather, they contend that Rotkowski was acting as their agent when he received the checks. Appellees argue Rotkowski was not appellants' agent but, rather, an independent contractor. Therefore, the determinative issue in this matter is whether or not Rotkowski was acting as appellants' agent when he received the checks. The existence of an agency relationship is a question of fact, rather than one of law.Dickinson v. Charter Oaks Tree Landscaping Co., Inc.,
Franklin App. No. 02AP-981, 2003-Ohio-2055, at ¶ 22. The trial court determined that reasonable minds could only conclude that Rotkowski was not acting as appellants' agent when he received the checks. We disagree.
 {¶ 9} This court has defined an agency relationship as "`the fiduciary relationship which results from the manifestation of consent by one person [principal] to another [agent] that the other shall act on his behalf and subject to his control, and consent by the other so to act.'" Berge v. Columbus CommunityCable Access (1999), 136 Ohio App.3d 281, 301, quoting Restatement of the Law 2d, Agency (1958) 7, Section 1. There are two types of agents: a general agent and a special agent. Restatement of the Law 2d, Agency (1958) 15, Section 3. A "general agent" is an agent "authorized to conduct a series of transactions involving a continuity of service" while a "special agent" is one who is "authorized to conduct a single transaction or a series of transactions not involving continuity of service." Id.; see, also, Bobko v. Sagen (1989), 61 Ohio App.3d 397, 408;Masek Distributing, Inc. v. First State Bank Trust Co.
(D.Kan. 1995), 908 F. Supp. 856, 862.
 {¶ 10} In contrast to an agency relationship where the agent consents to act on behalf of the principal, but subject to the principal's control, an "independent contractor" is defined as "`one who carries on an independent business, in the course of which he undertakes to accomplish some result or do some piece of work, for another, being left at liberty in general to choose his own means and methods, and being responsible to his employer only for the results which he has undertaken to bring about.'" Abramsv. Toledo Auto. Dealers Assn. (2001), 145 Ohio App.3d 187, 191, quoting Post Publishing Co. v. Schickling (1926),22 Ohio App. 318, 322.
 {¶ 11} The Ohio Supreme Court has set out a test to distinguish an agency relationship (sometimes also referred to as a master-servant relationship) from an employer-independent contractor relationship:" Did the employer retain control of, or the right to control, the mode and manner of doing the work contracted for? If he did, the relationship is that of principal and agent or master and servant. If he did not but is interested merely in the ultimate result to be accomplished, the relationship is that of employer and independent contractor."Councell v. Douglas (1955), 163 Ohio St. 292, paragraph one of the syllabus; Berge, supra; Moton v. Ford Motor Credit Co.
(Dec. 17, 2001), Richland App. No. 01 CA 4.
 {¶ 12} Here, the evidence of whether appellants' relationship with Rotkowski or Xpress was that of principal-agent or employer-independent contractor is conflicting. The evidence indicates that appellants sporadically hired Rotkowski to handle individual closings and instructed him when and where each closing would take place. They required him to perform specific tasks during the closing and faxed him a specific list of closing instructions for at least one of the closings at issue here. Appellants provided Rotkowski with all the documents necessary to complete each closing. Appellants authorized him to accept checks at the closings, but did not authorize him to endorse or deposit the checks. Appellants also provided Rotkowski with an overnight return envelope for him to immediately return the signed documents and checks to appellants' office.
 {¶ 13} Several of appellants' employees testified that neither Rotkowski nor Xpress were appellants' agent, employee or representative, and that delivery of the instruments occurred only when the appellants actually received the instruments. Other testimony indicated a special agency relationship. For example, Kathy Nicholson, appellants' operation manager, expressly testified that Rotkowski was appellants' agent for the limited purpose of accepting delivery of checks on appellants' behalf.
 {¶ 14} Construing all of the evidence in favor of appellants, and giving appellants, as the non-moving parties, the benefit of all reasonable inferences from the evidence, we conclude that reasonable minds could differ on whether appellants had sufficient control of Rotkowski's conduct under their agreement to create a special agency for the limited purpose of receiving checks on appellants' behalf during the closing and then forwarding those checks to appellants' office. Therefore, the trial court erred in granting appellees' motion for a directed verdict.
 {¶ 15} This conclusion is further supported by the analysis set forth by the Supreme Court of Virginia in a case involving an analogous factual situation. Hartzell Fan, Inc. v. Waco, Inc.
(Va. 1998), 505 S.E.2d 196. In that case, Hartzell contracted with Metrix, Ltd., to act as its sales representative. As Hartzell's sales representative, Metrix would occasionally receive checks from customers made payable to Hartzell. Metrix was required by its agreement with Hartzell to immediately forward the checks to Hartzell. However, when Metrix later received five checks made payable to Hartzell, Metrix endorsed the checks and deposited the checks into its own account without Hartzell's knowledge. The court in Hartzell was asked to determine whether Metrix acted as Hartzell's agent when it received the checks in question for purposes of a statutory conversion claim. The court found that Metrix's express authority to forward checks it received, and its implicit authority to receive such checks, made Metrix Hartzell's special agent "for the limited purpose of receiving payments from customers and forwarding those payments to Hartzell" even though the contract expressly stated that Metrix was an independent contactor. Id. at 201. Because the court concluded that Metrix was Hartzell's special agent when it received the checks, Hartzell could bring a conversion claim.[3] The holding in Hartzell supports our conclusion in the case at bar that reasonable minds could differ regarding whether there was a special agency relationship between appellants and Rotkowski/Xpress.
 {¶ 16} Appellees also argue that appellants failed to demonstrate that the checks were delivered to Rotkowski. Delivery is defined as a "voluntary transfer of possession." R.C.1301.01(N). Appellees claim there was no evidence indicating how Rotkowski obtained possession of the checks. We disagree. The evidence indicated that appellants hired Rotkowski to perform closings on its behalf and instructed him when and where to go to conduct these closings. Appellants instructed the buyers to go to the same place with checks in the amount necessary to complete the transaction. Rotkowski was the closing agent who accepted these checks. This evidence is sufficient for reasonable minds to conclude that the buyers voluntarily transferred possession of the checks to Rotkowski.
 {¶ 17} Therefore, appellants' first assignment of error is sustained.
 {¶ 18} Appellants contend in their second assignment of error that the trial court erred in denying its motion for summary judgment. However, a trial court's order denying a motion for summary judgment is not a final appealable order. Featherstonev. CM Media, Inc., Franklin App. No. 02AP-65, 2002-Ohio-6747, at ¶ 19, citing State ex rel. Overmyer v. Walinski (1966),8 Ohio St.2d 23. Therefore, appellants are precluded from seeking review of the denial of a motion for summary judgment until the trial court enters a subsequent, adverse and final judgment on the merits of the claim. Balson v. Dodds (1980),62 Ohio St.2d 287-289; Abrams, at 193. Because we have reversed the trial court's grant of appellees' motion for directed verdict on appellants' conversion claims, there is no adverse and final judgment on the merits of those claims. Therefore, we dismiss that portion of the appeal which relates to the trial court's denial of appellants' motion for summary judgment. Ross v.Belden Park Co. (Apr. 16, 2001), Stark App. No. 2000CA00086.
 {¶ 19} Having sustained appellants' first assignment of error, we reverse the trial court's judgment and remand this matter to the trial court for proceedings consistent with this opinion. That portion of the appeal which relates to appellants' second assignment of error is dismissed.
Judgment reversed and cause remanded.
Lazarus, P.J., and Brown, J., concur.
[1] Xpress and Rotkowski paid back the amount of one of these checks to appellants and that check is not involved in this appeal.
[2] The trial court also granted appellees' directed verdict motion as to appellants' breach of contract claims. However, appellants have not assigned that portion of the trial court's decision as error.
[3] The court in Hartzell reached this conclusion as a matter of law because the existence of the agency relationship was based solely upon a written contract.