OPINION.
{¶ 1} Plaintiff-appellant Leroy Jones, dba LRJ Bonding, a licensed professional bail bondsman, appeals from the trial court's judgment entered following a bench trial on defendant — appellee Charles Bea's counterclaim that Jones had "fraudulently converted" the proceeds of a $15,205 cashier's check issued by Bea's bank and payable to the Hamilton County Clerk of Courts. The check was a 10% deposit securing a $120,000 surety bail bond for the release of Bea's son, defendant Charles Anthony Bea, from custody. Bea and Jones had an oral agreement that when the $15,000 deposit was refunded by the clerk, Jones would give Bea $8,000, keeping the remainder as his fee. When the son failed to appear at his sentencing hearing, however, and the full amount of the bail, including the deposit, was forfeited, Jones did not return the $8,000 to Bea. Because Jones had deposited the check with the clerk to secure the son's release, and because Bea had acknowledged that if his son failed to appear, the deposit would be forfeited and that none of it would be returned to him, the judgment entered in Bea's favor on the counterclaim must be reversed.
 Bail for Bea's Son {¶ 2} Bea's adult son was arrested and taken into custody pursuant to a five-count criminal indictment. The court set bail at $30,000 for each count, for a total of $150,000. The bail was ultimately reduced to $120,000 when one of the five charges against Bea's son was dismissed. The court specifically conditioned the son's release, consistent with Crim.R. 46(A)(2), on a bail bond secured by the deposit of ten percent of the bail amount and posted with the clerk of courts. Bea and his wife learned that they could obtain their son's release by depositing with the clerk a check for $15,205 representing 10% of the bail plus costs and fees. Crim.R. 46(J) also required that before Bea's son would be released, Bea had to complete a worksheet and affidavit describing his financial ability to secure the bail bond in the event of forfeiture. For reasons undisclosed in the record, Bea did not complete the worksheet and affidavit.
 {¶ 3} When the Beas returned to the clerk's office with a cashier's check for $15,205, Jones met them outside. Jones claimed that he was there at the request of the Beas and of one of his employees who knew the Beas and their son. The Beas, however, contended that they had not requested Jones's services. Bea testified that Jones acted as an officious intermeddler when he posted the $15,205 cashier's check on their behalf. As a licensed surety bail bondsman, Jones was not required to complete the worksheet and affidavit. See Crim.R. 46(J); see, also, R.C.3905.85 et seq. Jones signed the Recognizance for Appearance forms as surety and posted the check with the clerk, and Charles Anthony Bea was released.
 Forfeiture of the Bail Bond and Deposit {¶ 4} Pursuant to Crim.R. 46(I), when an accused fails to appear, "any bail given for the person's release may be forfeited." When Bea's son failed to appear in court for sentencing, the bond was forfeited and judgment was entered against Jones in the full amount of the bail, in accordance with R.C. 2937.35.
 {¶ 5} Jones filed a complaint against Bea seeking indemnification for the forfeited $120,000 surety bond. Jones contended that Bea had agreed to indemnify him if the son did not appear and Jones became responsible for the full amount of the bail. Bea and his wife denied agreeing to indemnify Jones if their son's bail was forfeited. As the recognizance forms filed with the clerk's office identified only Jones as the surety for the amount of the bail, and as Jones acknowledged that ordinarily he would have had Bea and his wife come to his office and sign an agreement of indemnification before posting the bond, but no such written agreement was offered in evidence, the trial court entered judgment for Bea on Jones's claim for indemnification.
 {¶ 6} Jones does not seek reversal of this portion of the trial court's judgment. On appeal, Jones seeks only the reversal of the judgment entered for Bea on his counterclaim for the return of the bond deposit. Bea has not filed an appellee's brief in this appeal. See App.R. 18(C). And his son has not appealed from that portion of the judgment ordering him to indemnify Jones for the full amount of the bond. He remains a fugitive.
 The Standard of Review {¶ 7} In a single assignment of error, Jones argues that there was insufficient evidence to support the trial court's decision on the counterclaim. An appellate court will not reverse a judgment of the trial court if it is supported by some competent, credible evidence going to all the essential elements of the case or defense. See Myers v. Garson (1993),66 Ohio St.3d 610, 614 N.E.2d 742; C.E. Morris Co. v. Foley Constr. Co.
(1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus. Nonetheless, where there is no evidence to support an element of the case or defense, an appellate court may find error as a matter of law and reverse the judgment. See, e.g., In re Adoption of Kuhlmann
(1994), 99 Ohio App.3d 44, 50, 649 N.E.2d 1279. Also, if an appealing party is entitled to judgment, an appellate court may render the judgment that the trial court ought to have rendered. See App.R. 12(B) and 12(C).
 The Counterclaim for Conversion of the Deposit {¶ 8} Bea contended in his counterclaim that Jones had fraudulently converted the $15,205 deposit by posting the deposit "under [Jones's] name so that any proceeds returned would be distributed to [Jones]." Bea asserted that Jones had not returned any of the deposit to Bea despite their oral refund agreement. On appeal, Jones contends that, as the issuer of the check, Bea was not the proper plaintiff in an action for conversion. R.C.1303.60(A) provides, in pertinent part, that "[a]n action for conversion of an instrument may not be brought by the issuer * * * of the instrument."
 {¶ 9} Conversion is the "wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." State ex rel. Toma v. Corrigan,92 Ohio St.3d 589, 592, 2001-Ohio-1289, 752 N.E.2d 281. While the law of conversion of personal property applies to the conversion of a negotiable instrument, see R.C. 1303.60(A), effective July 19, 1994, adopting Section 3-420 of the Uniform Commercial Code, "[t]he classic plaintiff in a conversion action is the payee owner from whom" a check has been stolen, typically by a forged endorsement. White Summers, Uniform Commercial Code (1988) 663, Section 15-5; see, e.g., Title First Agency, Inc. v. XpressClosing Srv., Inc., 10th Dist. No. 03AP-179, 2004-Ohio-242. There is no reason why a drawer or issuer should have an action in conversion, as the check represents an obligation of the drawer rather than property of the drawer. See White Summers, Uniform Commercial Code (1988) 662, Section 15-5. Here the payee of the check was the clerk of courts.
 {¶ 10} While Jones is correct in his statement of the law, Bea was not in this case the issuer of the cashier's check. The issuer is the "maker or drawer of an * * * instrument." R.C.1303.01(A)(6). A maker is "a person who signs or is identified in a note as a person undertaking to pay." R.C. 1303.01(A)(7). A drawer is "a person who signs or is identified in a draft as a person ordering payment." R.C. 1303.01(A)(3). While, in the ordinary sense of the word, Bea caused the check to be issued, he did not sign the instrument and was not identified anywhere on the face of the draft as the one ordering payment. Unlike the case of a personal check, the drawer, and the drawee, of a cashier's check is the bank itself. See R.C. 1303.01(G). Thus, the R.C. 1303.60(A) proscription against Bea bringing a conversion claim did not apply in this case.
 {¶ 11} But, here, there was no evidence of the unauthorized payment of the check. The cashier's check was used for the purpose for which Bea caused it to be issued — payment to the clerk to secure his son's release. There was no wrongful exercise of dominion over the check inconsistent with Bea's rights. Therefore, Bea's fraud, Bea's burden was to prove, inter alia, that Jones had made a false, material misrepresentation about whether Bea could post the bail himself or would have to employ Jones's services; that Bea justifiably relied upon that misrepresentation; and that an injury was proximately caused by that reliance. See Burr v. Stark Cty. Bd. of Commrs. (1986),23 Ohio St.3d 69, 491 N.E.2d 1101, paragraph two of the syllabus.
 {¶ 12} The trial court, despite finding "major discrepancies in the testimony," determined that Bea's testimony was "credible" and awarded him a judgment for $15,205. But the trial testimony did not support the trial court's conclusions. Jones testified that he and Bea had made an oral agreement providing that if Bea's son appeared for sentencing, when the deposit was refunded by the clerk in accordance with Crim.R. 46(A)(2), Jones would give Bea $8,000, keeping the remainder as his fee. Bea acknowledged this agreement in court. But Bea also testified that if his son did not appear for sentencing, he was aware that the deposit would be forfeited and that none of the deposit would be returned to him.
 {¶ 13} When Bea's son failed to appear, in accordance with Crim.R. 46(I), the bail was forfeited, and thus there were no "proceeds" to refund. As Bea acknowledged, the deposit would not be have been returned to him whether Jones had intervened or not. Rather than acting as an officious intermeddler, under his agreement, Jones, as the surety, had assumed the entire risk of payment of the $120,000 if the son became a fugitive and the court forfeited his bail. Thus Bea sustained no injury proximately caused by Jones's representations made outside the clerk's office. There was no competent, credible evidence to support the decision of the trial court that Bea was entitled to a return of any portion of the $15,205, if, as it so happened, his son failed to appear at sentencing. The trial court's judgment awarding Bea $15,205 was entered in error. Jones's assignment of error is sustained.
 Conclusion {¶ 14} Only that portion of the trial court's judgment awarding Bea $15,205 for fraudulent conversion of the 10% cash deposit securing the bail bond is reversed. Judgment is entered for Jones on Bea's counterclaim. Otherwise the judgment of the trial court is affirmed.
Judgment accordingly.
Winkler, P.J., and Painter, J., concur.