COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Senior Judges Willis and Annunziata
Argued at Alexandria, Virginia


RUSSELL FISHER
                                                          OPINION BY
v.        Record No. 0542-07-4               JUDGE ROSEMARIE ANNUNZIATA
                                                        FEBRUARY 26, 2008
PAUL C. SALUTE, ADMINISTRATOR
  OF THE ESTATE OF JOSEPH JOHN SALUTE, DECEASED


                FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                              Richard B. Potter, Judge

            Richard W. Driscoll (Richard E. Starr; Driscoll & Seltzer, PLLC;
            Irving Starr Esq., P.C., on briefs), for appellant.

            Edward L. Weiner (Sandra M. Rohrstaff; Lawson D. Spivey, III;
            Weiner, Rohrstaff & Spivey, PLC, on brief), for appellee.


        Russell Fisher appeals the trial court's rulings that he was in contempt of the trial court's

orders.  On appeal, Fisher contends:  (1) the trial court lacked jurisdiction to enforce the order

approving a wrongful death settlement by contempt proceedings; and (2) the trial court abused its

discretion by finding him in contempt.  We hold that the trial court did not abuse its discretion by

finding Fisher in contempt, and we affirm the decisions of the trial court.

                                          Facts

        This case began as a wrongful death action in which the son of Paul C. Salute was

electrocuted and drowned in lake waters near a boat dock owned by Fisher.  It was alleged that

Fisher had improperly installed, maintained, and operated an electrical system on his boat dock

and that, as a result of this negligence, the boy was killed.

        The wrongful death action was settled by the parties pursuant to a "Memorandum of

Understanding" dated October 17, 2003.  On November 14, 2003, the trial court entered an order

entitled "Order Approving Wrongful Death Settlement" as an agreed order. The order provided: "Fisher agrees to remove his dock within sixty days of November 14, 2003, and agrees not to have another dock while residing in Montclair." In addition, the trial court "ORDERED that . . . Fisher shall remove his dock by January 14, 2004 and shall not have another dock while residing in Montclair."

On January 21, 2004, Salute filed a petition and affidavit for the issuance of a rule to show cause, alleging that Fisher had failed to remove the dock as required by the trial court's order. On February 20, 2004, the trial court held a hearing and found that Fisher was in violation of the court's order because he had not yet removed all the wooden portion and the concrete support below the wooden portion of the dock. In addition, the trial court found Fisher had willfully and intentionally violated the letter and spirit of the agreed order dated November 14, 2003. The court ordered Fisher to remove the wooden and concrete portions of the dock and stated that Fisher could purge himself of contempt by complying with the court's order. The trial court continued the case until May 7, 2004 for review of Fisher's compliance with the order.

On May 7, 2004, the parties appeared before the trial court and the trial court again ordered that "the wooden portion must be removed." Fisher had attached metal stanchions to the wooden platform that was serving as a landing at the end of wooden steps leading to a dock box on the platform. Fisher secured boats to this platform and argued the structure did not create a dock. The trial court disagreed, and it ordered the removal of the "box" and "landing" being used to secure the boats. The trial court found Fisher in contempt for willful violations of the trial court's previous orders and continued the case to June 25, 2004 for review of Fisher's compliance with the court's order.

Prior to the scheduled June 25, 2004 hearing, Salute inspected Fisher's property and agreed Fisher had purged himself of contempt. Salute filed a motion to remove the case from the

docket and, on June 2, 2004, after finding that Fisher had complied with the court's November 14, 2003 order, the trial court entered an agreed order purging Fisher of contempt.

Almost one year later, on May 25, 2005, Salute filed a second petition and affidavit for the issuance of a rule to show cause to find Fisher in contempt, alleging that Fisher was again maintaining a dock at his residence. Evidence presented at a hearing held on August 17, 2005, showed Fisher was securing boats to the last few steps at the bottom of a wooden stairway that led from the residence to the water, to stakes driven into the ground along the shoreline, and to pontoon boats. Doug Taggert, President of the Montclair Property Owners Association (MPOA) testified that in July 2005, he saw the boats tied to the steps that were located in the common property belonging to the MPOA. Taggert described the wooden steps as "functioning as a dock."[1]

The trial court disagreed with Fisher's argument that he was not using the steps as a dock, and found that Fisher was in violation of the previous court orders. It ordered that, by September 9, 2005, Fisher remove the wooden portion of the steps, platforms, stanchions, and stakes. The trial court also ordered Fisher to pay Salute $4,679.50 in attorney's fees and costs associated with the rule to show cause. On September 9, 2005, the trial court entered an order reflecting the rulings made on August 17, 2005 and continued the case until September 23, 2005 to allow Fisher to purge himself of any further contempt.[2]

---

[1] Taggert referred to the following MPOA guidelines in defining the term, "dock":

> Part of our community guidelines does define that any structure, specifically a dock, and it goes on under the sections of those guidelines, stipulates whether it be a pier, a wharf, a dock, it's a fixed structure protruding into our common property must be approved by the [MPOA] in written form.

[2] Fisher appealed the September 9, 2005 order to this Court, and we dismissed the appeal because the September 9, 2005 order did not specifically state that Fisher had "willfully violated" the court's order "nor did it find him in contempt of that order." This Court's order

On September 23, 2005, the trial court found Fisher had removed the wooden steps and platform "that he was using for a dock" and had, thereby, purged himself of that finding of contempt.

On June 16, 2006, Fisher filed a motion for correction of the September 9, 2005 order and for entry of a final order. On July 28, 2006, Salute filed a motion for entry of a final order finding Fisher in contempt, alleging again that Fisher was maintaining a dock at his residence.

At the December 4, 2006 hearing on these motions, Fisher admitted that he had secured boats to rocks located at the foot of the steps at his property and that he had tied two boats together. Photographs introduced into evidence also showed an electric cord coming from the land, dipping into the water and onto the boats tied together. The trial court found Fisher in willful violation of the orders of the court, specifically the orders of November 14, 2003, and September 9, 2005, therefore finding him in contempt of court. The trial court ordered Fisher to "purge himself of contempt by not continuing to use, in this case, his boats as a dock at the subject property." The order reflecting these rulings was entered on February 2, 2007. The February 2, 2007 order also clarified, *nunc pro tunc*, that the trial court had found Fisher in contempt at the August 17, 2005 hearing for willful violation of the previous court orders dated November 14, 2003, April 12, 2004, and May 25, 2004. Fisher appeals the trial court's order entered on September 9, 2005, and the February 2, 2007 order finding him in contempt.

Analysis

I. Jurisdiction

Fisher contends the trial court lacked subject matter jurisdiction to enforce the terms of the wrongful death settlement agreement because its role is limited to approving the settlement

---

also noted that, because the September 9, 2005 order continued the case to September 23, 2005, it was not a final order.

terms and the distribution of funds to the statutory class of heirs.  He contends the plain language

of Code § 8.01-55 does not grant the trial court authority to make the terms of a wrongful death

settlement a part of an order that may be later enforced through contempt proceedings and, to the

extent the November 14, 2003 settlement order provides for more than approval and distribution,

it is void *ab initio*.  Fisher, thus, reasons that any finding of contempt based on the affirmative

relief in the November 14, 2003 settlement order is also void *ab initio*.  He also asserts that "the

appropriate mechanism for [Salute] to bring this matter before the court and seek relief is by an

independent action for breach of contract."  Finally, he challenges the trial court's jurisdiction on

the ground that Rule 1:1 barred the trial court from taking any action twenty-one days after entry

of the November 14, 2003 settlement order.  We disagree with each of these contentions.

We find nothing in the language of the Wrongful Death Act, Code §§ 8.01-50 through

8.01-56, that precludes the inclusion in the court's order of the affirmative relief the parties had

agreed to as part of their settlement of a Wrongful Death Action.[3]

Furthermore, the parties jointly petitioned the trial court to enter an order that not only

approved the settlement but also included the affirmative relief that Fisher agreed to provide and

about which he now complains.  Specifically, Fisher's agreement to remove his dock and to not

---

[3] Code § 8.01-55 provides in pertinent part:

> The personal representative of the deceased may
> compromise any claim to damages arising under or by virtue of
> [Code] § 8.01-50 . . . before or after an action is brought, with the
> approval of the court in which the action was brought, or if an
> action has not been brought, with the consent of any circuit
> court. . . .

> If the court approves the compromise, and the parties in
> interest do not agree upon the distribution to be made of what has
> been or may be received by the personal representative under such
> compromise, or if any of them are incapable of making a valid
> agreement, the court shall direct such distribution as a jury might
> direct under [Code] § 8.01-52 as to damages awarded by them.

have another dock while residing in Montclair was made part of the trial court's order approving the wrongful death settlement. The order specifically stated that "Fisher shall remove his dock by January 14, 2004 and shall not have another dock . . . ." Fisher signed this order "SEEN AND AGREED," raising no objections.[4] When the trial court approved the settlement agreement and included its terms in its court order of November 14, 2003, it retained the right to enforce the obligations imposed upon Fisher by enforcing that order. "[W]hen parties to a settlement ask the court to make the terms of the settlement a court-ordered judgment, the parties must be prepared for the court to use its contempt powers to enforce its orders." PCI Energy Servs., Inc. v. Wachs Technical Servs., Inc., 470 S.E.2d 565, 567 (N.C. Ct. App. 1996).

It is axiomatic that a court may find a party in contempt for "disobedience or resistance . . . to any lawful process, judgment, decree or order of the court." Code § 18.2-456(5); see also Higginbotham v. Commonwealth, 206 Va. 291, 294, 142 S.E.2d 746, 749 (1965) ("It has long been recognized and established that a court is invested with power to punish for contempt, both by the inherent nature and constitution of the court and by [statute]." (internal citations omitted)). "The power to punish for contempt is inherent in, and as ancient as, courts themselves. It is essential to the proper administration of the law, to enable courts to enforce their orders, judgments and decrees." Carter v. Commonwealth, 2 Va. App. 392, 395, 345 S.E.2d 5, 7 (1986).

---

[4] To the extent Fisher is attacking the content of the trial court's order approving the wrongful death settlement, Fisher did not appeal that order within twenty-one days after its entry. See Rule 1:1. After that, absent a perfected appeal, the judgment was final and conclusive and cannot be collaterally attacked in a contempt proceeding. Rook v. Rook, 233 Va. 92, 95, 353 S.E.2d 756, 758 (1987).

Fisher's jurisdictional argument is also premised on Rule1:1.[5] He contends the rule barred the court from entertaining Salute's rule to show cause. The argument is without merit. A rule to show cause is "ancillary to and in support of" the prior decree. Eddens v. Eddens, 188 Va. 511, 521-22, 50 S.E.2d 397, 402 (1948). "[T]he fact that the decree was final did not render the court powerless to enforce it by contempt proceedings." Rinehart & Dennis Co., Inc. v. McArthur, 123 Va. 556, 563, 96 S.E. 829, 832 (1918). Salute sought enforcement of the provision of the order related to the dock, not its modification, vacation or suspension. Therefore, Rule 1:1 did not bar Salute's petition.

In summary, we find that the trial court properly made the terms of the wrongful death settlement a part of an order that it could later enforce through contempt proceedings.

## II.  Contempt

The November 14, 2003 order approving the wrongful death settlement ordered Fisher to remove the existing dock by January 14, 2004 and ordered Fisher not to have another dock while residing at Montclair. Fisher argues that the trial court's subsequent order of September 9, 2005 and its February 2, 2007 final order altered the definition of "dock" that was previously applied on June 2, 2004 to determine Fisher's compliance with the November 2003 settlement order. Fisher contends the trial court, therefore, abused its discretion by finding him in contempt of court orders that applied changing definitions of "dock." Fisher asserts that the settlement agreement did not require the removal of any steps and that the phrase "shall not have another dock" does not restrict him from securing a boat at his property by tying it to the steps, a stake, or a rock, as alleged in the rule to show cause. We find no merit in his argument.

---

[5] Rule 1:1 provides in part: "All final judgments orders and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer."

"'It is within the discretion of the trial court' to conduct civil contempt proceedings, thus we review the exercise of a court's contempt power under an abuse of discretion standard." Petrosinelli v. People for Ethical Treatment of Animals, 273 Va. 700, 706, 643 S.E.2d 151, 154 (2007) (citations omitted). "When dealing with discretionary decisions, only 'when reasonable jurists could not differ can we say an abuse of discretion has occurred.'" Robbins v. Robbins, 48 Va. App. 466, 482, 632 S.E.2d 615, 623 (2006) (quoting Hernandez-Guerrero v. Commonwealth, 46 Va. App. 366, 370, 617 S.E.2d 410, 412 (2005) (citation omitted)). "The abuse of discretion standard, 'if nothing else, means that the trial judge's "ruling will not be reversed simply because an appellate court disagrees."'" Hernandez-Guerrero, 46 Va. App. at 370, 617 S.E.2d at 412 (quoting Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743, aff'd, 45 Va. App. 811, 613 S.E.2d 870 (2005) (en banc)).

With respect to a trial court's factual findings that underlie its judgment of contempt, "'[W]here . . . the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (quoting Martin v. Pittsylvania Department of Social Services, 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986)); see also, Mardula v. Mendelson, 34 Va. App. 120, 125, 538 S.E.2d 338, 341 (2000).

The trial court found the word "dock," as used in the settlement agreement and the court's order, was not ambiguous and that its meaning is clear. In reaching its conclusions, the trial court referenced the following definitions for dock in Webster's Dictionary:

> Webster['s] says "a dock is a *landing pier*; a wharf; a large excavated basin equipped with butt gates *used for receiving ships*, etc., the area of water between two docks;" "a pier or a wharf or a group of piers, a platform at which trucks or trains load or unload cargo;" "an area of water between two piers or alongside a pier *that receives a ship* for loading, unloading or repairs."

(Emphasis added). The trial court's focus was, thus, on the function not the form of the structure or apparatus at issue.

The meaning given to the term by the president of the MPOA was similarly focused on function not form. The witness stated that the boats he saw were tied to a "wooden structure" that extends onto the common property of the MPOA, and "function[ed] as a dock." He further testified that tying a boat to a stake in the ground was, in fact, a dock. Indeed, Fisher's testimony established that he was using such stakes in conjunction with the steps on his property to "moor" his boats and gain access to them, in essence, to function as a dock. Georgia Mayer, a member of the lake committee which advises the MPOA and called as a witness on Fisher's behalf, admitted that Fisher was using the stakes to keep the boats from "drift[ing] off" and that the steps, in part, were put to the same use as a dock, i.e., "to get on and off from boat to shore."

The photographs admitted into evidence at the August 17, 2005 hearing showed the stairway, and testimony established that a cleat to which he tied his boats had been attached to the stairway, allowing Fisher to run an electric cord to the boats. The stairway was functioning as a place to moor boats, in other words, as a "dock." Fisher, himself, agreed that "you could say [he] was using the shoreline as a dock." At the conclusion of the August 17, 2005 hearing, the trial court found that Fisher "clearly [had] a dock by use." It further noted that he had "agreed not to have a dock, period," and noted that Fisher "fought complying with this [c]ourt order every step of the way . . . . He must stop using those premises as a dock to dock those boats. . . . [H]e'll simply have to stop using his property as a dock which is what he agreed to do back in 2003."

The photographs introduced at the December 4, 2006 hearing showed Fisher had two boats tied together and that they were anchored to rocks. The photographs also showed an electric cord coming from the land, dipping into the water and onto one of the boats. From the

- 9 -

photographs, the trial court could reasonably conclude that the two boats lashed together and anchored to rocks functioned as a place to moor boats and have access to them, in other words, "functioned like a dock."

Fisher argues that the trial court altered and expanded the definition of dock and improperly based its finding of contempt on a term that was indefinite, citing Winn v. Winn, 218 Va. 8, 235 S.E.2d 307 (1977). In Winn, the Court stated the general rule: "'[B]efore a person may be held in contempt for violating a court order, the order must be in definite terms as to the duties thereby imposed upon him and the command must be expressed rather than implied.'" Id. at 10, 235 S.E.2d at 309 (quoting Wood v. Goodson, 485 S.W.2d 213, 217 (Ark. 1972)). Fisher's argument ignores that its function or use is inherent in the meaning of the word "dock." No matter how referenced, a dock is a place to moor or tie a boat. That aspect of the meaning inheres in every definition that was before the court and constitutes the specific conduct prohibited by the court's November 2003 order, the conduct that Fisher agreed to desist from as part of his agreement with Salute in settlement of the Wrongful Death Action. Indeed, the context of the Wrongful Death Action and the settlement that followed supports the trial court's grounding of its ruling on the function or use of the structure that Fisher was prohibited from maintaining. Accordingly, we hold that the trial court's orders upon which the contempt show cause was predicated contained an expressly imposed duty upon Fisher which required him to remove the steps and any associated mechanisms that functioned as a dock. The trial court, therefore, did not abuse its discretion by finding Fisher in contempt for failing to comply with its previous orders.

Finally, Fisher contends that the requirement to remove the stairs was a punitive sanction as opposed to compensatory civil sanction. However, "the punishment which may be imposed [for contempt] is not limited to a fine and/or imprisonment. It is adapted to what is necessary to

- 10 -

afford the injured party remedial relief for the injury or damage done by the violation of the [order] . . . ." Deeds v. Gilmer, 162 Va. 157, 262, 174 S.E. 37, 78-79 (1934). The trial court's requirement that Fisher remove the steps that he was using as a dock was not ordered to punish him, but simply to bring him into compliance with the settlement agreement. Fisher repeatedly tied his boat to various structures or objects on his property that he was using to moor or dock his boat; the trial court pointed out that Fisher "fought complying with this [c]ourt's order every step of the way . . . ."

In summary, we find that Fisher's use of boats as a floating dock and his use of wooden steps, rocks, and stakes to moor his boats for access to them violated the terms of the November 14, 2003 order and the trial court's order of September 9, 2005 and its February 2, 2007 final order were both properly entered.

### III. Attorney's Fees and Costs

Fisher's request that the trial court's award of attorney's fees be reversed is denied. "An award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion." Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987). "The key to a proper award of counsel fees [is] . . . reasonableness under all of the circumstances revealed by the record." McGinnis v. McGinnis, 1 Va. App. 272, 277, 338 S.E.2d 159, 162 (1985).

Fisher entered into a settlement agreement in October 2003, agreeing to remove his existing dock and refrain from having another dock. The November 14, 2003 court order approving the terms of the settlement agreement specifically ordered Fisher to comply with that provision. Fisher has belabored this process multiple times requiring the parents of the deceased to bring him into court on multiple rules to show cause. The trial court did not abuse its discretion in requiring Fisher to pay Salute's attorney's fees in the trial court.

- 11 -

Salute's request that we assess "costs" against Fisher is granted, and we remand the matter to the trial court for the entry of such an order as may appear appropriate.

IV.  <u>Conclusion</u>

We affirm the trial court's judgments of contempt related to the trial court orders entered on September 9, 2005 and February 2, 2007, deny Fisher's request to reverse the trial court's award of attorney's fees, and grant Salute's request for costs.  We accordingly remand this matter to the trial court for entry of an order regarding the award of costs to Salute as may appear appropriate.

<u>Affirmed and remanded</u>.