COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Powell and Senior Judge Annunziata
Argued at Alexandria, Virginia


PAUL DAVID HUGHES

MEMORANDUM OPINION[*] BY
v.        Record No. 2602-09-4          JUDGE LARRY G. ELDER
SEPTEMBER 7, 2010

RUTH HANKINSON HUGHES


FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Jeffrey W. Parker, Judge

August McCarthy for appellant.

Julia Savage (Walker Jones, PC, on brief), for appellee.


Paul David Hughes (husband) appeals the ruling of the Circuit Court of Fauquier County

regarding child support arrearages owed to Ruth Hankinson Hughes (wife).  Husband further

appeals the circuit court's decision finding him in contempt.  Wife cross-appeals, arguing that the

circuit court erred by not awarding her attorney's fees.  For the following reasons, we affirm in

part and reverse in part.

I.  BACKGROUND

This case stems from a dispute over the amount of child support owed following the

parties' divorce.  The parties had two minor children at the time of the divorce, L.C.H. and a

younger child.

The parties signed a "Property Settlement and Separation Agreement and Stipulation"

(PSA), which was ultimately affirmed, ratified, and incorporated into the divorce decree.  The

PSA specifically provided, in pertinent part:

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

The Husband shall pay to the Wife for the support and maintenance of the parties' minor children, the sum of $1,175.00 per month. Payment in this amount shall commence on the first day of January, 2005 and continue thereafter on the first day of each succeeding month until the death of either child, the death of the Husband, or either of the children reaching the age of 18 or becoming otherwise emancipated. However, support will continue to be paid for any child over the age of 18 who is (i) a full time high school student, (ii) not self-supporting and (iii) living in the home of the party seeking or receiving child support, until such child reaches the age of 19 or graduates high school, whichever first occurs.

\* \* \* \* \* \* \*

The parties agree that any reasonable expenses, including but not limited to, interest on any unpaid obligations, counsel fees, court costs, and travel, incurred by a party in the successful enforcement of any of the provisions of this Agreement, whether through litigation, attorney letters and other informal actions, or other action necessary to compel compliance herewith, shall be borne by the defaulting party. Any such costs incurred by a party in the successful defense to any action for enforcement of any such provision shall be borne by the party seeking to enforce compliance.

The child L.C.H. turned eighteen years old in October of 2008, leaving one minor child in wife's household. In response, husband unilaterally reduced his monthly child support payments by half.

Wife petitioned for a rule to show cause. At the resulting hearing, the circuit court heard testimony and argument from the parties. Husband explained that he believed that L.C.H.'s birthday automatically reduced his child support payments by half. He did not seek the court's permission because he did not think doing so was necessary. [1]

The circuit court determined the PSA was incomplete, explaining:

This agreement is silent as to what happens when [L.C.H.'s] emancipation . . . occurs. It's missing a sentence. It didn't say [husband's child support obligation is] divided in half. It didn't

---

[1] Although the parties disputed whether L.C.H. was a full-time student after turning eighteen, the record is inconclusive on this point, and the court did not rule on this issue.

say it's divided by a third. It didn't say we were going to follow the child support guidelines. It says nothing. So the problem is you've got an agreement that is incomplete and the Court can't write the contract for the parties.

The circuit court thus found that husband improperly reduced the child support payment. Accordingly, the court calculated the sum of the arrearage based on the $1,175 amount provided in the PSA.

The circuit court further found husband in civil contempt, noting that it was "kind of a close case . . . because the agreement is not as clear as it should be." The court noted, "[I]f he had tried to follow the guidelines and reduced it to the guidelines, I might have felt differently." The circuit court permitted husband to purge his contempt by paying the full amount of his child support arrearage within a year.

Additionally, in rejecting wife's request for attorney's fees, the circuit court simply stated that it was "not going to award any attorney's fees." Husband appeals the circuit court's determination of the child support arrearage and contempt findings, and wife cross-appeals the denial of attorney's fees.

## II. ANALYSIS

### A.

### CHILD SUPPORT

Husband argues that Code § 20-109.1 allowed him to modify the child support amount without court intervention when L.C.H. reached the age of eighteen. He takes the position that the PSA clearly demonstrated the intent of the parties to modify the child support obligation when L.C.H. reached the age of eighteen, despite its silence as to how the child support obligations would be modified. Wife responds that the circuit court correctly determined a child support arrearage existed because the PSA lacked an identifiable methodology for recalculating child support and, thus, was not self-effectuating.

- 3 -

Under Code § 20-109.1, a court may affirm, ratify, and incorporate into a divorce decree any valid agreement between the parties concerning the care, custody, and maintenance of their minor children. "Unless otherwise provided for in such agreement or decree incorporating such agreement, such future modifications shall not require a subsequent court decree." Code § 20-109.1. This code section applies when the parties contract for a monetary support award and that contract specifically provides a method by which support is recalculated. See Shoup v. Shoup, 37 Va. App. 240, 253-54, 556 S.E.2d 783, 789-90 (2001) (en banc) (holding that the trial court erred by not enforcing the prospective modification of child support in the spousal agreement where that agreement provided the adjusted support would be based on "the child support guidelines and other relevant law").

Here, the agreement does not provide that the amount of support attributable to each child is equal or that support shall be reduced proportionately when a child reaches the age of majority. The child support award is unitary because it does not indicate what portion of the award is for each child, and the agreement provides no mechanism for the parties to determine how much support is due upon the terminating contingency of a child's reaching majority. The agreement's provision for the future reduction of child support was not self-executing because it did not provide how the parties should modify child support once the oldest child became emancipated.

Because the language in the agreement regarding the adjustment of child support was not self-executing, husband was obligated to obtain court approval before modifying support. See Goodpasture v. Goodpasture, 7 Va. App. 55, 58, 371 S.E.2d 845, 847 (1988) ("Should circumstances change requiring alteration in the amount of support, a party's remedy is to apply to the court for relief."); Johnson v. Johnson, 1 Va. App. 330, 333, 338 S.E.2d 353, 355 (1986) ("[S]ince this was a unitary award for alimony and child support, the husband's only remedy was

- 4 -

to apply to the court for a modification of the decree upon a change of condition."). Therefore, the circuit court properly found that husband violated the divorce decree by unilaterally reducing support and, consequently, owed wife child support arrearages.

Husband also argues that the circuit court erred in its calculation of the arrearage amount. According to husband, the court could only accept husband's method of reducing the support by half or recalculate the support according to Virginia's child support guidelines for the relevant period. Husband, however, cites no authority in support of his assertion. Rule 5A:20(e) required that an appellant's brief contain "[t]he principles of law, the argument, and the authorities relating to each question presented." "Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration." Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992). Accordingly, we decline to address husband's argument on this matter.

B.

CONTEMPT

Husband next argues that the trial court erred in finding him in civil contempt, because the evidence did not support a finding of willfulness. Wife does not address this issue.

"It 'is within the discretion of the trial court' to conduct civil contempt proceedings[;] thus we review the exercise of a court's contempt power under an abuse of discretion standard." Petrosinelli v. People for the Ethical Treatment of Animals, Inc., 273 Va. 700, 706, 643 S.E.2d 151, 154 (2007) (quoting Arvin, Inc. v. Sony Corp. of Am., 215 Va. 704, 706, 213 S.E.2d 753, 755 (1975)). A trial court may hold an offending party in contempt for "'acting in bad faith or for willful disobedience of its order.'" Commonwealth Dep't of Soc. Servs. ex rel Graham v. Bazemore, 32 Va. App. 451, 455, 528 S.E.2d 193, 195 (2008) (quoting Alexander v. Alexander, 12 Va. App. 691, 696, 406 S.E.2d 666, 669 (1991)). "'[B]efore a person may be held in contempt for violating a court order, the order must be in definite terms as to the duties thereby

imposed upon him and the command must be expressed rather than implied.'" Winn v. Winn, 218 Va. 8, 10, 235 S.E.2d 307, 309 (1977) (quoting Wood v. Goodson, 485 S.W.2d 213, 217 (Ark. 1972)); cf. Fisher v. Salute, 51 Va. App. 293, 305-06, 657 S.E.2d 169, 174-75 (2008) (upholding contempt finding where appellant used his property as a dock in violation of agreement expressly prohibiting him from having a dock). In other words, a person is in contempt of a court order only if it is shown that he or she has violated its express terms.

The circuit court found that husband's violation of the divorce decree was willful, but did not indicate that the violated duty was expressly stated in the PSA. Indeed, the court implicitly concluded the duty was not express by stating that, had husband unilaterally reduced the amount in accordance with the child support guidelines, such violation may not have been intentional. Because husband "did not violate a clearly defined duty imposed upon him by the agreement and the decree, his actions did not constitute contempt." Winn, 218 Va. at 10-11, 235 S.E.2d at 309. Therefore, we hold the circuit court abused its discretion by finding husband in contempt.

## C.

### ATTORNEY'S FEES

In her cross-appeal, wife argues that the circuit court erred in failing to award her attorney's fees as required by the PSA. Husband has not responded to this argument.

> When parties contract concerning their property, spousal support, and related aspects of their affairs and file the contract with the court before entry of the divorce decree, "no decree or order directing the payment of support and maintenance for the spouse, suit money, or counsel fee or establishing or imposing any other condition or consideration, monetary or nonmonetary, shall be entered except in accordance with that . . . contract."

Kaplan v. Kaplan, 21 Va. App. 542, 548, 466 S.E.2d 111, 114 (1996) (alteration in original) (quoting Code § 20-109).

Thus, when the parties have entered into a valid and enforceable PSA, "the statutory language of Code § 20-109(C) restricts the judge to decreeing according 'to the terms' of the agreement." Rutledge v. Rutledge, 45 Va. App. 56, 62, 608 S.E.2d 504, 507 (2005). Furthermore, "the statutory proviso, that no order 'shall be entered except in accordance with the . . . contract,' requires the trial judge to examine the parties' agreement to ascertain whether the relief sought by the moving party is encompassed within the terms of the agreement." Id. at 63, 608 S.E.2d at 508 (quoting White v. White, 257 Va. 139, 144-45, 509 S.E.2d 323, 326 (1999)).

In the present case, the PSA provided that wife was entitled to "any reasonable expenses, including but not limited to, interest on any unpaid obligations, counsel fees, court costs, and travel, incurred . . . in the successful enforcement" of the child support provisions of the PSA. As the relief sought by wife was clearly "encompassed within the terms of the agreement," the circuit court erred in failing to award wife attorney's fees.

Wife also seeks an award of attorney's fees and costs incurred in this appeal.

> The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear. The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment.

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). As husband's appeal of the child support determination lacks merit, we grant wife's request. We reverse the denial of attorney's fees and remand the case to the circuit court to determine an appropriate award of attorney's fees and costs arising from wife's enforcement of the PSA in circuit court as well as on appeal.

### III. CONCLUSION

For the foregoing reasons, we affirm the circuit court determination of husband's child support arrearage. We reverse the contempt finding and the denial of attorney's fees and costs

incurred by wife in her successful enforcement of the PSA.  We further grant wife's request for attorney's fees and costs incurred in responding to this appeal.  We remand to the circuit court for the entry of an order consistent with this opinion.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded.</u>

Powell, J., dissenting.

I respectfully dissent from the portion of this opinion holding that the circuit court abused its discretion by finding husband in contempt. "As a general rule, 'before a person may be held in contempt for violating a court order, the order must be in definite terms as to the duties thereby imposed upon him and the command must be expressed rather than implied.'" Winn v. Winn, 218 Va. 8, 10, 235 S.E.2d 307, 309 (1977) (quoting Wood v. Goodson, 485 S.W.2d 213, 217 (Ark. 1972)). Further,

> A trial court "has the authority to hold [an] offending party in contempt for acting in bad faith or for willful disobedience of its order." Carswell v. Matterson, 224 Va. 329, 332, 295 S.E.2d 899, 901 (1982). In a show cause hearing, the moving party need only prove that the offending party failed to comply with an order of the trial court. Frazier v. Commonwealth, 3 Va. App. 84, 87, 348 S.E.2d 405, 407 (1986). The offending party then has the burden of proving justification for his or her failure to comply. Id.

Alexander v. Alexander, 12 Va. App. 691, 696, 406 S.E.2d 666, 669 (1991).

Furthermore, it is well settled that, when an award of child support is unitary, the parties must return to court to have it changed. See Johnson v. Johnson, 1 Va. App. 330, 333, 338 S.E.2d 353, 355 (1986) ("since this was a unitary award . . ., the husband's only remedy was to apply to the court for a modification of the decree upon a change of condition"). Thus, the law is clear that, if husband's duty to pay child support was expressly stated in the PSA, then, until he petitioned the circuit court for modification, he was required to pay the full amount of child support.

In the present case, it is apparent that the trial court found that husband's duty to pay was expressly stated in the PSA; what was not expressly addressed in the PSA was the formula that should be used to reduce the support amount upon L.C.H.'s emancipation. Indeed, the trial court made the finding that husband "did violate the terms of the court order because it wasn't specific enough to allow him to do what he did. He just cut it in half."

The trial court went on to find that husband's violation was willful, stating that the decision to divide the amount in half was an "arbitrary decision" done with the attitude of "'well, I'm just going to do it anyway . . . . That's what I'm going to do and I don't care, really, what anybody thinks . . . .'"

Once wife met her burden of showing that husband failed to pay the full amount required by the PSA, the burden then shifted to husband to prove justification for his failure to comply, which husband failed to provide. As it is clear that the basis of the contempt finding was husband's decision not to pay the full amount of child support each month and not, as husband contends, his failure to follow the child support guidelines, I would not find that the trial court abused its discretion in finding husband in contempt.