COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Fulton and Friedman
Argued at Norfolk, Virginia

UNPUBLISHED

KEVIN L. NANCE, INDIVIDUALLY, ET AL.

v.        Record No. 0737-24-1

GREGORY NANCE, ET AL.

MEMORANDUM OPINION[*] BY
JUDGE RANDOLPH A. BEALES
JULY 29, 2025

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Tyneka L.D. Flythe, Judge

Patricia A. René (The René Law Firm, on brief), for appellants.

S. M. Franck (Michael B. Ware; Geddy, Harris, Franck & Hickman,
L.L.P.; Schempf & Ware, PLLC, on brief), for appellees.

Kevin L. Nance ("Kevin") and Karen E. Nance ("Karen"), individually and as trustees of

the Ivy Lloyd Nance Jr. Revocable Trust (collectively the "Trustees"), appeal from the judgment

of the Circuit Court of the City of Newport News interpreting an earlier settlement order that had

resolved litigation between the parties, who are siblings. The challenged order directed the

Trustees to convey two parcels of real property owned by the trust to their brothers, Gregory N.

Nance ("Gregory") and Jeffrey P. Nance ("Jeffrey"). The Trustees argue that the circuit court

violated Rule 1:1 by entering the challenged order, that the circuit court improperly interpreted

the earlier settlement order, and that the circuit court abused its discretion by directing the

Trustees to convey two parcels of real property to Gregory and Jeffrey despite insufficient

evidence to support that ruling. The Trustees also challenge the written statement of facts in lieu

of a transcript that the circuit court certified for this appeal.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

## I. BACKGROUND

"On appeal, we view the evidence 'in the light most favorable to the prevailing party below and its evidence is afforded all reasonable inferences fairly deducible therefrom.'" *Bedell v. Price*, 70 Va. App. 497, 500-01 (2019) (quoting *Bristol Dep't of Soc. Servs. v. Welch*, 64 Va. App. 34, 40 (2014)). In this case, Gregory and Jeffrey prevailed before the circuit court.

Ivy Lloyd Nance Jr. ("Ivy") created a revocable trust by agreement dated January 24, 2013, which named Kevin and Karen as co-trustees of the trust. The trust agreement directed the Trustees, upon Ivy's death, to make certain distributions and payments (that are not at issue in this appeal) and then to distribute the remaining trust property to Ivy's children (who are the parties to this appeal). Ivy died in 2021.

On May 23, 2022, Gregory filed a complaint in the circuit court alleging that the Trustees had breached their fiduciary duties. Gregory amended his complaint on March 20, 2023. The amended complaint sought an accounting, the removal of the Trustees, and damages against the Trustees for breach of their fiduciary duties. In the alternative, Gregory asked the circuit court to compel the Trustees to submit a plan for distributing the trust's assets.

On May 22, 2023, the parties participated in a settlement conference and ultimately reached an agreement to resolve their pending litigation. Under the settlement agreement, the Trustees had the trust's real property appraised and the parties agreed on a plan to distribute the trust's assets. On August 2, 2023, the parties signed a handwritten distribution plan prepared by Gregory's and Jeffrey's counsel and then presented that distribution plan to the circuit court. Based on the distribution plan and the representations made by the parties, the circuit court entered a settlement order on August 23, 2023. The settlement order directed the Trustees to distribute certain "real property of the trust as described in appraisals by Matthew W. Larkin and Bret G. Derby obtained by the Trust" to Kevin Nance and Karen Nance, the Trustees,

"individually as beneficiaries of the Trust." The settlement order specifically identified the real property to be distributed to the Trustees as (a) "4705 Norris Ct."; (b) "4703 Norris Ct."; (c) "162 Bell Rd."; (d) "1205 73rd St."; and (e) "[a] sliver of land adjacent to 4705 Norris Ct. which was not included in its appraisal." The settlement order also directed the Trustees to distribute "all other real property of the Trust" to Gregory Nance and Jeffrey Nance "individually as beneficiaries of the Trust." In addition, the settlement order directed the Trustees to "pay any real estate taxes on any real property of the Trust which are currently due or past due"—and to pay $60,250 to Gregory and Jeffrey "on or before the earlier of the sale of the property at 1205 73rd St. or February 1, 2024."

In November 2023, Gregory and Jeffrey moved the circuit court to enforce its August 23, 2023 settlement order. Gregory and Jeffrey alleged that the Trustees had not conveyed several parcels of the trust's real property to them as required by the circuit court's August 23, 2023 settlement order. Their motion specifically identified Lot 5 and the northern half of Lot 6 (which are the two lots that are at issue in this appeal).

At the hearing before the circuit court, the parties addressed whether the settlement order included Lot 5 and the northern half of Lot 6 when the settlement order identified "162 Bell Rd." "as described in appraisals by Mathew W. Larkin and Bret G. Derby."[1] The Trustees argued that the Derby appraisal of 162 Bell Road included Lot 5 and the northern half of Lot 6. Although the Derby appraisal references the legal description solely of Lot 4, the Trustees maintained that

---

[1] The Derby appraisal identifies the legal description of 162 Bell Road as "Lot 4, York River; PB [plat book] 7/PG [page] 72," and includes the property's map reference number (23-131L-396A3) and tax assessor's parcel number (which is identical). The appraisal describes the property as comprising 0.564 acre with a 1,764 square-foot three-bedroom house, as well as a one-car carport and a detached two-car garage with a bath and kitchen above. The appraisal includes photographs (all of which are unlabeled, except for two photographs that are identified as front and rear views). The appraisal also includes a floorplan drawing that depicts the house and the carport but does not depict the garage.

the only reasonable conclusion from the appraisal's other references is that the appraisal does not limit the property's description to just Lot 4.

After hearing argument and considering the settlement order, the Derby appraisal, and the property cards for Lot 4, Lot 5, and the northern half of Lot 6, the circuit court found that the appraisal's legal description of 162 Bell Road only includes Lot 4. The circuit court concluded that because the Derby appraisal only described Lot 4, the Trustees were thus required under the settlement order to convey Lot 5 and the northern half of Lot 6 to Gregory and Jeffrey. The circuit court also concluded that because the Trustees had failed to make the required conveyances, the Trustees had violated the earlier settlement order. By enforcement order entered on April 4, 2024, the circuit court ordered the Trustees to execute deeds conveying the contested properties. The circuit court also ordered the Trustees to pay Gregory and Jeffrey the $60,250 payment required by the settlement order (plus interest from February 1, 2024)—and also to pay certain real estate taxes and penalties. In addition, the circuit court awarded both Gregory and Jeffrey $2000 each for their attorney fees.

The Trustees timely noted their appeal of the circuit court's enforcement order and also filed a written statement of facts in lieu of a transcript pursuant to Rule 5A:8(c)(1). Gregory and Jeffrey objected to the Trustees' proposed statement of facts in lieu of a transcript and then filed their own proposed written statement of facts in lieu of a transcript. Gregory and Jeffrey claimed that the Trustees' proposed statement of facts in lieu of a transcript "described communications purportedly made at a judicial settlement conference, which are confidential." They also argued that the Trustees had incorrectly characterized "the terms of the settlement" by providing a rationale for the payment to Gregory and Jeffrey even though the settlement agreement did not include one. In response, the Trustees objected to the proposed statement of facts in lieu of a transcript submitted by Gregory and Jeffrey, asserting that Gregory's and Jeffrey's statement of

facts in lieu of a transcript did not recite the "statements and arguments" that counsel for the Trustees had made before the circuit court, including the "additional references" in the appraisal and in the property cards that they argued supported their position. The Trustees contended that these omissions made Gregory's and Jeffrey's statement of facts in lieu of a transcript incomplete and that the omissions "suggest[ed] that the Court's ruling was based solely on the appraisals and property cards."

Following a hearing on the parties' competing proposed statements of fact in lieu of a transcript, the circuit court sustained Gregory's and Jeffrey's objections to the Trustees' proposed written statement of facts in lieu of a transcript. In addition, on June 17, 2024, the circuit court signed and entered the statement of facts in lieu of a transcript submitted by Gregory and Jeffrey.

## II.  ANALYSIS

### A.  The Circuit Court's Jurisdiction

On appeal, the Trustees argue, "The trial court lacked jurisdiction to consider the issues raised in the Appellees' motions and supplement thereto to enforce the settlement agreement; therefore, the Order entered thereon is void." The Trustees contend that the circuit court's April 4, 2024 enforcement order "is void and a nullity" because the August 23, 2023 settlement order "became final 21 days after entry, except for the ministerial tasks of enforcing the Order as written." Although the Trustees acknowledge that the circuit court could enforce the settlement order's judgment regarding "the payment of $60,250," they maintain that the circuit court had no authority to "re-litigate the distribution of the properties" or "to interpret the appraisal to determine whether 162 Bell Road included" Lot 5 and the northern half of Lot 6.

It is well-settled that "[w]hether the record establishes subject matter jurisdiction in a particular case is a question of law reviewed *de novo* on appeal." *Ruderman v. Pritchard*, 76

Va. App. 295, 302 (2022) (citing *Parrish v. Fed. Nat'l Mortg. Assoc.*, 292 Va. 44, 49 (2016)). During such review, appellate courts are "not limited to the arguments raised by the parties." *Id.* (quoting *Parrish*, 292 Va. at 49). "To the extent the Court's analysis involves statutory interpretation, questions of statutory construction are also reviewed under a de novo standard." *Id.* (citing *Collelo v. Geographic Servs., Inc.*, 283 Va. 56, 66 (2012)).

"All final judgments, orders, and decrees, irrespective of terms of court, remain under the control of the trial court and may be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer." Rule 1:1(a). "Unless a court vacates or suspends a final order during the twenty-one-day period or some other exception to the general rule applies, the court loses jurisdiction over the case and any action taken by the trial court after the twenty-one-day period has run is a nullity." *Minor v Commonwealth*, 66 Va. App. 728, 739-40 (2016). However, an exception to the twenty-one-day period of Rule 1:1(a) is that a trial court may "address[] motions to enforce a final judgment, including, but not limited to, the exercise of the court's contempt powers." Rule 1:1B(a)(3)(F). Thus, "[w]hen parties to a settlement ask the court to make the terms of the settlement a court-ordered judgment, the parties must be prepared for the court to use its contempt powers to enforce its orders." *Fisher v. Salute*, 51 Va. App. 293, 301 (2008) (quoting *PCI Energy Servs., Inc. v. Wachs Tech. Servs., Inc.*, 470 S.E.2d 565, 567 (N.C. Ct. App. 1996)). Furthermore, "[t]rial courts have the authority to interpret their own orders." *Davis v. Commonwealth*, 70 Va. App. 722, 732 (2019) (quoting *Fredericksburg Constr. Co. v. J.W. Wyne Excavating, Inc.*, 260 Va. 137, 144 (2000)).

In their motion, Gregory and Jeffrey did not ask the circuit court to modify, vacate, or suspend the earlier settlement order. Rather, they asserted that the Trustees had failed to comply with the requirements of the settlement order by refusing to convey Lot 5 and the northern half of Lot 6. Because Gregory and Jeffrey asked the circuit court to do no more than simply to enforce its

own previously entered settlement order, the circuit court therefore had jurisdiction to address their motion. *See Fisher*, 51 Va. App. at 302 (rejecting the argument that Rule 1:1 barred a trial court from addressing a rule to show cause because the plaintiff sought enforcement of an order's provision, "not its modification, vacation or suspension"); *see also* Rule 1:1B(a)(3)(F). To *enforce* its earlier settlement order, the circuit court also necessarily had the authority to *interpret* that settlement order. *See Davis*, 70 Va. App. at 732. In interpreting the settlement order to determine what was required of the Trustees, the circuit court was thus permitted to interpret the Derby appraisal, which the circuit court had explicitly incorporated by reference into the settlement order. *See Watts v. Commonwealth*, 82 Va. App. 428, 446 (2024) (*en banc*) (noting that "[a]n incorporation by reference of one document into another 'must be clear, full, and definite and must be expressly done'" and that "[t]o incorporate material by reference, the host document must identify with detailed particularity what specific material it incorporates and clearly indicate where the material is found in the various documents"). For all of these reasons, the circuit court had jurisdiction to enforce and to interpret the settlement order.

### B. The Circuit Court's Judgment

The Trustees also argue, "The trial court erred in finding that the appraisal described only lot 4; and, that lots 5 and 6 are conveyed to the Appellees per the settlement agreement." They assert that the "appraisal references a two-car garage that has a bath and kitchen over it" and that the appraisal includes photographs of the detached garage. According to the Trustees, those discrepancies undermine the conclusion that the Derby appraisal described only Lot 4, and because the settlement order "does not describe any of the properties by lot description or property card," the circuit court erred in its interpretation of the appraisal.

"This Court 'defer[s] to the trial court's interpretation of its own order.'" *Davis*, 70 Va. App. at 732 (quoting *Leitao v. Commonwealth*, 39 Va. App. 435, 438 (2002)); *see also Rusty's*

*Welding Serv., Inc. v. Gibson*, 29 Va. App. 119, 129 (1999) (*en banc*). "That interpretation, however, must be reasonable, and [this Court] will 'apply an abuse of discretion standard.'" *Davis*, 70 Va. App. at 732 (alteration in original) (quoting *Bajgain v. Bajgain*, 64 Va. App. 439, 453 (2015)); *see also Roe v. Commonwealth*, 271 Va. 453, 458 (2006). The Supreme Court has explained that "the phrase 'abuse of discretion' means that the circuit court 'has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" *Sauder v. Ferguson*, 289 Va. 449, 459 (2015) (quoting *Landrum v. Chippenham & Johnson-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)). "We apply this 'bell-shaped curve of reasonability' based on our 'venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie.'" *Carrithers v. Harrah*, 63 Va. App. 641, 654 (2014) (quoting *Hamad v. Hamad*, 61 Va. App. 593, 607 (2013)).

"We will not set aside the factual findings of a trial court unless they are 'plainly wrong or without evidence to support [them].'" *Farah v. Commonwealth*, 300 Va. 458, 470 (2022) (alteration in original) (quoting Code § 8.01-680); *see also Moncrieffe v. Deno*, 76 Va. App. 488, 496 (2023) ("When a trial court renders judgment after a bench trial, we cannot set aside that judgment as contrary to the evidence 'unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it.'" (quoting Code § 8.01-680)). The Supreme Court has stated, "[U]nder [this] standard of review applicable to judges sitting as factfinders no less than jurors, we review factfinding with the highest degree of appellate deference." *Palmer v. R.A. Yancey Lumber Corp.*, 294 Va. 140, 158 (2017) (alterations in original) (quoting *Forest Lakes Cmty. Ass'n v. United Land Corp. of Am.*, 293 Va. 113, 117 (2017)). "In addition, we view the evidence and all reasonable inferences drawn from it in the light most favorable to [appellees], as the prevailing party at trial." *Id.* (citing *Manchester Oaks Homeowners Ass'n v. Batt*, 284 Va. 409, 423 (2012)). "In this respect, our appellate review 'is not limited to the

evidence mentioned by a party in trial argument or by the trial court in its ruling.'" *Minh Duy Du v. Commonwealth*, 292 Va. 555, 566 (2016) (quoting *Perry v. Commonwealth*, 280 Va. 572, 580 (2010)).

In this case, the circuit court's settlement order specifically directed the Trustees to convey certain "real property of the trust as described in appraisals by Matthew W. Larkin and Bret G. Derby obtained by the Trust" (including "162 Bell Rd.") to the Trustees (i.e., Kevin and Karen)—and to convey "all other real property of the Trust" to Gregory and Jeffrey. In their motion requesting enforcement of the earlier settlement order, Gregory and Jeffrey alleged that the Trustees had not conveyed certain properties to them as required by the settlement order. The settlement order did not specify the trust properties to be conveyed other than by address and by reference to the Derby appraisal. Thus, in order to determine whether the Trustees had violated the requirements of the settlement order, the circuit court had to refer to and to interpret the Derby appraisal—which was expressly incorporated by reference into the settlement order entered by the circuit court. *See Watts*, 82 Va. App. at 446.

The settlement order specifically listed five properties identified by address (including "162 Bell Rd.") that the Trustees were directed to convey to the Trustees (i.e., Kevin and Karen). The Derby appraisal (which, as noted *supra*, was incorporated by reference into the settlement order) provided that the legal description of 162 Bell Road (the appraised property) is "Lot 4, York River; PB 7/PG 72." Although the Derby appraisal clearly described Lot 4, it did not reference Lot 5 or any part of Lot 6. The circuit court found that under the plain terms of the settlement order (which included the incorporated-by-reference Derby appraisal), 162 Bell Road referred to Lot 4 and fell within the category of specifically enumerated real property to be conveyed by the Trustees to Kevin and Karen—while Lot 5 and the northern half of Lot 6 fell within the catch-all

- 9 -

"all other real property" category that the Trustees were required to convey to Gregory and Jeffrey.

Although the Trustees argue that the settlement order included Lot 5 and the northern half of Lot 6 (along with Lot 4) as part of "162 Bell Rd.," the plain language in the settlement order (along with the incorporated-by-reference Derby appraisal) simply does not support this argument. As noted *supra*, the settlement order specifically referenced the five pieces of real property held by the trust that were to be conveyed to Kevin and Karen in their individual capacity. Four of those properties were identified by their associated address, including "162 Bell Rd." (which the Derby appraisal described as "Lot 4, York River; PB 7/PG 72"). A fifth property was identified as "[a] sliver of land adjacent to 4705 Norris Ct. which was not included in its appraisal." However, nowhere in those specifically enumerated five properties is there any reference at all to Lot 5 or the northern half of Lot 6—even though the circuit court certainly knew how to reference property that did not have an associated address, such as the fifth property (i.e., the "sliver of land adjacent to 4705 Norris Ct. which was not included in its appraisal"). By not including Lot 5 or the northern half of Lot 6 among the five properties specifically described in the settlement order to be conveyed to Kevin and Karen, the circuit court clearly showed that Lot 5 and the northern half of Lot 6 were not among the properties to be conveyed to Kevin and Karen but were instead part of the "all other real property of the Trust" to be conveyed to Gregory and Jeffrey. Consequently, the circuit court did not abuse its discretion in finding that "162 Bell Rd." included only Lot 4 (which is to be conveyed to Kevin and Karen)—and that Lot 5 and the northern half of Lot 6 are to be conveyed to Gregory and Jeffrey.[2]

---

[2] We note that there is no evidence in the record before this Court on appeal that would indicate that the detached garage is not located on Lot 4. The record does not disclose on which lot the garage is located or what the pictures in the appraisal depict—except for two photographs that are identified as front and rear views of the property. This Court has often stated, "[a]n appellate court must dispose of the case upon the record and cannot base its decision upon

In short, we certainly cannot say that the circuit court, as factfinder, was plainly wrong to give substantial weight to the legal description in the Derby appraisal (as the circuit court did here) and would accord little weight to the points asserted by the Trustees. *See Da'mes v. Da'mes*, 74 Va. App. 138, 150 (2022). Therefore, we hold that the circuit court's judgment regarding the conveyance of Lot 5 and the northern half of Lot 6 is not plainly wrong or without credible evidence to support it.[3] *See* Code § 8.01-680.

## C. The Written Statement of Facts in Lieu of a Transcript

The Trustees go on to argue, "The trial court erred in refusing to include any of Appellants' proposed statements into the Statement of Facts in Lieu of Transcript." They contend that their proposed written statement of facts in lieu of a transcript included "certain details contained in the appraisal and property cards," which the circuit court wrongly "rejected." Although they acknowledge that "the appraisal and property card evidence speak[s] for itself," they nevertheless maintain that the circuit court should have included the specific details "of those documents [they]

---

appellant's petition or brief. . . . We may act only upon facts contained in the record." *Browning v. Browning*, 68 Va. App. 19, 26-27 (2017) (alterations in original) (quoting *Smith v. Commonwealth*, 16 Va. App. 630, 635 (1993)). Because nothing in the record discloses on which lot the detached garage is located or what the other pictures in the appraisal depict, we cannot say that the detached garage is not located on Lot 4—or that, because the Derby appraisal includes the detached garage in the photographs of the property, the appraisal describes more than Lot 4.

[3] "It is well settled that 'the doctrine of judicial restraint dictates that we decide cases "on the best and narrowest grounds available."'" *PAE Nat'l Sec. Sols., LLC v. Constellis, LLC*, 83 Va. App. 252, 267 n.6 (2025) (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017)). "The 'best' answer to a legal question is the one with which the least number of jurists would disagree or, in other words, the one with which the greatest number of jurists would agree." *Id.* (quoting *Butcher v. Commonwealth*, 298 Va. 392, 396 (2020)). "The 'narrowest' answer to a legal question is the one affecting the least number of cases." *Id.* Having determined that the trial court was not plainly wrong in concluding that 162 Bell Road only included Lot 4, we need not reach the separate issue of whether the property cards were properly admitted into evidence and considered by the trial court. Furthermore, the Trustees did not actually object in the circuit court to the admittance of the property cards into evidence, so we cannot now reach that issue on appeal. *See* Rule 5A:18.

argued to the trial court in support of [their] position that all of the lots are included in the Bell Road address." The Trustees further contend that the circuit court erred by not including the requests that they had made at the settlement conference in the written statement of facts in lieu of a transcript. They claim that the circuit court certified an incomplete written statement of facts in lieu of a transcript.

We review a circuit court's ruling regarding a written statement of facts in lieu of a transcript for an abuse of discretion. *Harter v. Commonwealth*, 31 Va. App. 743, 752 (2000). An appellant may file a written statement of facts in lieu of a transcript and the opposing party may then object to the appellant's written statement of facts in lieu of a transcript by filing a notice "specifying the errors alleged or deficiencies asserted." Rule 5A:8(c), (d). If objections are filed by either party, the circuit court judge must hold a hearing and then "(1) overrule the objection; or (2) make any corrections that the [circuit court] judge deems necessary; or (3) include any accurate additions to make the record complete; or (4) certify the manner in which the record is incomplete; and (5) sign the . . . written statement [of facts in lieu of a transcript]." *Wolfe v. Shulan Jiang*, 83 Va. App. 107, 114 (2025) (alterations in original) (quoting Rule 5A:8(d)).

In this case, the record contains the Derby appraisal and certain property cards, so the specific details of those documents are also in the record. Thus, the record regarding the Derby appraisal and the property cards was complete without the Trustees' written statement of facts in lieu of a transcript emphasizing those specific details. *See Harter*, 31 Va. App. at 752 (holding that the circuit court did not abuse its discretion by refusing to sign a written statement of facts in lieu of a transcript when the record was already complete on its own).

Furthermore, any requests that the Trustees made during the settlement conference are "evidence of settlement negotiations inadmissible at trial." *Town of Iron Gate v. Simpson*, 82 Va. App. 38, 55 (2024); *see* Va. R. Evid. 2:408(a) (barring admission of offers and responses

concerning settlement of any disputed claim to "prove or disprove the validity or amount of" the claim); *see also Lyle, Siegel, Croshaw & Beale, P.C. v. Tidewater Cap. Corp.*, 249 Va. 426, 438 (1995) ("Generally, on public policy grounds, an offer to settle or compromise a disputed claim is inadmissible in evidence."). Therefore, the circuit court did not err in refusing to include the Trustees' requests made during the settlement conference.

In addition, after holding a hearing, the circuit court sustained the objections made by Gregory and Jeffrey, the circuit court overruled the objections made by the Trustees, and the circuit court certified a written statement of facts in lieu of a transcript. The circuit court complied with the procedural requirements of Rule 5A:8 and exercised its sound discretion to ensure that the written statement of facts in lieu of a transcript was complete and accurate. The circuit court did not stray from the permissible range of choice and was not influenced by any mistake of law. Consequently, the circuit court did not abuse its discretion by certifying the statement of facts in lieu of a transcript without the information that the Trustees claim should have been included. *See Carrithers*, 63 Va. App. at 653; *Harter*, 31 Va. App. at 752; *Simpson*, 82 Va. App. at 55; Va. R. Evid. 2:408(a).

## D. The Additional Arguments

In addition, the Trustees argue, "The trial court erred in construing the settlement agreement in favor of the Appellees, where the agreement, written by the Appellees, is ambiguous and unenforceable." The Trustees further argue, "The evidence is insufficient as a matter of law to support the trial court's Order to re-distribute the properties." In particular, they contend that the settlement order's description of the real property to be conveyed to Gregory and Jeffrey—i.e., "all other real property of the Trust"—is so vague that it "cannot possibly support a finding" that Lot 5 and the northern half of Lot 6 were to be conveyed to Gregory and Jeffrey. Finally, the Trustees argue, "The trial court erred in ordering the re-distribution of the

properties, in contravention of the provisions of the Trust." They contend that the trust agreement gave them authority to decide which real property of the trust to distribute to each beneficiary and that the circuit court had no authority to interfere in their distribution decisions. They also contend that *res judicata* barred Gregory and Jeffrey from relitigating "the distribution of the properties," which the settlement order had resolved.

Rule 5A:18 provides:

> No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice. A mere statement that the judgment or award is contrary to the law and the evidence is not sufficient to preserve the issue for appellate review.

"It is the appellant's burden to obtain a clear ruling from the [circuit] court on an issue he wishes to raise on appeal. This burden stems from the requirement that a litigant state an objection with reasonable certainty at the time of the ruling." *Moroney v. Majerus*, 82 Va. App. 737, 759 (2024) (alteration in original) (quoting *Northcraft v. Commonwealth*, 78 Va. App. 563, 610 n.17 (2023)). Although Rule 5A:18 contains exceptions for good cause or to meet the ends of justice, the Trustees have not argued either exception to us on appeal, and we will not invoke them *sua sponte*. *See Spanos v. Taylor*, 76 Va. App. 810, 827-28 (2023) (stating that when an appellant "has not invoked either exception to Rule 5A:18," this Court "do[es] not consider them *sua sponte*"); *Widdifield v. Commonwealth*, 43 Va. App. 559, 564 (2004) (*en banc*) ("When an appellant has had so many opportunities to raise the exception and has not, for the Court to raise it *sua sponte* would compromise the Court's role and place it in the position of becoming a *de facto* advocate."). *See also Jones v. Commonwealth*, 293 Va. 29, 39 n.5 (2017) (noting that when an appellant "does not assert any grounds for invoking the 'good cause' or 'ends of justice' exceptions under Rule 5:25," the Supreme Court "will not sua sponte raise them on his behalf").

- 14 -

In short, the record before this Court on appeal simply does not show that the Trustees ever presented these additional arguments to the circuit court—or that they ever obtained a ruling from the circuit court on their additional arguments. Consequently, we cannot consider the Trustees' additional arguments. Rule 5A:18; *see also Moroney*, 82 Va. App. at 759.

## III. CONCLUSION

For all of the foregoing reasons, we do not disturb the judgment of the circuit court.

*Affirmed.*